UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARQUIMEDES MENDOZA, | No.  2:09-cv-1710 MCE DAD P |
| Petitioner, | |
| v. | ORDER SETTING EVIDENTIARY |
| MATTHEW CATE, | HEARING |
| Respondent. | |

Petitioner is a state prisoner proceeding through counsel with a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner challenges a 2004 judgment of conviction for rape of an intoxicated person in violation of California Penal Code § 261(a)(3), which was entered in the San Joaquin County Superior Court pursuant to his guilty plea.  Petitioner raises two grounds for federal habeas relief:  (1) ineffective assistance of counsel in the negotiation and entry of his guilty plea based on counsel's misrepresentation that the conviction to which he was pleading guilty was not a "strike" under California's Three Strikes Law; and (2) ineffective assistance of counsel in failing to investigate and challenge the validity of the prosecutor's DNA evidence.

The habeas petition pending before this court was filed on June 22, 2009.  Respondent filed an answer on January 23, 2012, and petitioner filed a traverse on February 24, 2012.  On August 1, 2012, this court appointed counsel for petitioner.

1

1        On April 26, 2013, petitioner filed a motion for discovery and/or to expand the record.  By

2 order dated July 29, 2013, the undersigned issued an order denying petitioner's motion for

3 discovery without prejudice to a renewal of the motion within thirty days.  On August 21, 2013,

4 petitioner filed a renewed motion for discovery and/or expansion of the record.  At the October

5 25, 2013 hearing on that motion, counsel for petitioner stated that he was also seeking an

6 evidentiary hearing on his claim of ineffective assistance of counsel during the plea bargain

7 process in state court.

8        For the reasons described below, the court concludes that an evidentiary hearing should be

9 held on petitioner's claim of ineffective assistance of counsel in connection with plea negotiations

10 and entry of his guilty plea in his underling state court case.  Petitioner's motion for

11 discovery/expansion of the record and an evidentiary hearing will be denied in all other respects.

12 **I.  Petitioner's Claim of Ineffective Assistance of Counsel in Plea Negotiations**

13        **A.  Description of Petitioner's Claim**

14        Petitioner claims that his guilty plea was not knowingly or voluntarily entered because he

15 was denied the effective assistance of counsel in plea negotiations and in the entry of his guilty

16 plea.  (Petition (ECF No. 1) at 6.)  In this regard, petitioner explains that he did not want to plead

17 guilty to an offense that would be considered a "strike" under California's Three Strikes Law

18 because he had suffered a strike conviction after he was charged with the instant offense and

19 wanted to avoid a second strike.  Accordingly, during the plea negotiations he repeatedly asked

20 his trial counsel if the offense to which he was pleading guilty would be considered a strike.

21 Petitioner alleges that his attorney assured him the charge to which he was pleading guilty did not

22 qualify as a strike under California's law and that his counsel even emphasized that very point on

23 the record at the change of plea hearing.  (Id.)  The following exchange at the plea hearing

24 provides evidence supporting petitioner's allegation in this regard:

25              MR. HICKEY [Petitioner's Counsel]:  He is prepared this morning
             to resolve his case.  I have been in discussion with Mr. Brooks.  We

26              have come up with a section that is fine as to his conduct; sex with
             a woman who is passed out.  So we'll enter a plea to 261(a)(3) for a

27              period of three years.

28                               * * *

1   MR. HICKEY:  We want to make sure the subsection is correct, because it does make a difference.

2

3   THE COURT:  261(a)(3).

    MR. BROOKS [Deputy District Attorney]:  Correct.

4
                            * * *

5

6   THE COURT:  Having each of your rights in mind then, how do you plead to Count 1, a violation of Section 261(a)(3) of the Penal Code, a rape by use of drugs, a felony, occurring July 17, 1999?

7

    THE DEFENDANT:  Guilty.

8
                            * * *

9

10  THE COURT:  Because it is a serious felony or violent felony conviction, you will be required to complete 85 percent of the term.

11  MR. HICKEY [Petitioner's Counsel]:  No, that was not agreed upon.  That is why we found this section.

12

13  THE COURT:  This is not a strike, then?

14  MR. BROOKS [Deputy District Attorney]:  I don't believe so, Judge.

15  THE COURT:  All right.  You will be eligible for 50 percent good time/work time credits.  Do you understand that?

16

    THE DEFENDANT: Yes.

17

18  (Id. at 82, 85-86.)  In fact, however, the charge to which petitioner pled guilty constituted a

19  "strike" under California's Three Strikes Law.

20          Petitioner states that he would not have accepted the prosecution's plea offer if he had

21  known that the offense to which he was pleading guilty was a strike.  (Id. at 6.)  He explains that

22  if his trial counsel was unable to negotiate a plea to a non-strike offense he would have proceeded

23  to trial.  (Id.)  In support of this contention petitioner argues that the case against him was weak.

24  (Id.)  He states that "the only eyewitness named a person other than myself as the man she had

25  observed initiating sexual relations with the unconscious victim."  (Id.)  Petitioner also argues

26  that he did not match the physical description of the perpetrator as described by the eyewitness

27  and that the only evidence implicating him in the commission of the offense was a "cold hit" with

28  California's DNA database.  (Id.)  He contends that, even if his DNA was present in the evidence

3

1  sample, this was not

2  > inconsistent with the theory, argued by my attorney at the
3  > preliminary hearing, that my presence in the room where the
   > offense occurred and my non-criminal contact with both the victim
   > and the perpetrator shortly before the offense could have accounted
4  > for the presence of my DNA in the evidence sample through
   > inadvertent transfer and/or non-sexual contact.

5  (Id.)

6        Petitioner explains that he would not have agreed to plead guilty to a "strike" offense

7  "when I already had one strike prior, and the only direct evidence [of petitioner's guilt] was both

8  subject to challenge and also subject to an alternative exculpatory interpretation." (Id.)  He notes

9  that at the change of plea hearing his attorney explained that the parties had specifically chosen

10  the charge to which he would plead guilty because it made "a difference." (Id. at 11.)  Petitioner

11  also notes that the prosecutor was willing to allow him to plead guilty to a non-strike offense.

12  (Id.)  Petitioner argues that the colloquy at his change of plea hearing itself corroborates his

13  declaration that he would have proceeded to trial if he had known that the charge to which he was

14  pleading guilty was a strike.  (Traverse (Doc. No. 34) at 4.)  He contends that the non-strike

15  character of the plea was what made the plea offer "new and better than what had previously been

16  possible." (Id.)  Finally, petitioner observes that respondent has not submitted a declaration from

17  petitioner's trial counsel or from the prosecutor "that would counter either Mr. Mendoza's

18  account or the record of the plea hearing."  (Id. at 5.)

19        **B. Legal Standards Applicable to Claims of Ineffective Assistance of Counsel**

20        To support a claim of ineffective assistance of counsel, a petitioner must first show that,

21  considering all the circumstances, counsel's performance fell below an objective standard of

22  reasonableness.  Strickland v. Washington, 466 U.S. 668, 687-88 (1984).  After a petitioner

23  identifies the acts or omissions that are alleged not to have been the result of reasonable

24  professional judgment, the court must determine whether, in light of all the circumstances, the

25  identified acts or omissions were outside the wide range of professionally competent assistance.

26  Id. at 690; Wiggins v. Smith, 539 U.S. 510, 521 (2003).  Second, a petitioner must establish that

27  he was prejudiced by counsel's deficient performance.  Strickland, 466 U.S. at 693-94.  Prejudice

28  is found where "there is a reasonable probability that, but for counsel's unprofessional errors, the

1    result of the proceeding would have been different." Id. at 694. A reasonable probability is "a

2    probability sufficient to undermine confidence in the outcome." Id.

3        The Strickland standards apply to claims of ineffective assistance of counsel involving

4    counsel's advice offered during the plea bargain process. Missouri v. Frye, ___ U.S. ___, 132 S.

5    Ct. 1399 (2012); Lafler v. Cooper, ___ U.S. ___, 132 S. Ct. 1376 (2012); Padilla v. Kentucky,

6    559 U.S. 356 (2009); Hill v. Lockhart, 474 U.S. 52, 58 (1985); Nunes v. Mueller, 350 F.3d 1045,

7    1052 (9th Cir. 2003). "A defendant has the right to make a reasonably informed decision whether

8    to accept a plea offer." Turner v. Calderon, 281 F.3d 851, 880 (9th Cir. 2002) (citations

9    omitted). Trial counsel must give the defendant sufficient information regarding a plea offer to

10   enable him to make an intelligent decision. Id. at 881. "[W]here the issue is whether to advise

11   the client to plead or not 'the attorney has the duty to advise the defendant of the available options

12   and possible consequences' and failure to do so constitutes ineffective assistance of counsel."

13   United States v. Blaylock, 20 F.3d 1458, 1465 (9th Cir. 1994) (quoting Beckham v. Wainwright,

14   639 F.2d 262, 267 (5th Cir.1981)). The relevant question is not whether "counsel's advice [was]

15   right or wrong, but . . . whether that advice was within the range of competence demanded of

16   attorneys in criminal cases." McMann v. Richardson, 397 U.S. 759, 771 (1970). This court must

17   review for objective unreasonableness the state court's conclusions as to whether counsel's

18   performance was deficient or resulted in prejudice. Weaver v. Palmateer, 455 F.3d 958, 965 n.9

19   (9th Cir. 2006) (citing Lambert v. Blodgett, 393 F.3d 943, 978 (9th Cir. 2004)). The state court's

20   underlying factual determinations are reviewed for unreasonableness in light of the record

21   evidence. Id.

22       A defendant may attack the voluntary and intelligent character of his plea by showing that

23   he received incompetent advice from counsel in connection with the plea. Tollett v. Henderson,

24   411 U.S. 258, 267 (1973) (a defendant who pleads guilty upon the advice of counsel "may only

25   attack the voluntary and intelligent character of the guilty plea by showing that the advice he

26   received from counsel was not within the standards set forth in McMann"); Mitchell v. Superior

27   Court for City of Santa Clara, 632 F.2d 767, 769-70 (9th Cir. 1980). In order to show prejudice

28   in cases where a defendant claims that ineffective assistance of trial counsel led him to accept a

1   plea offer instead of proceeding to trial, a defendant must demonstrate "a reasonable probability

2   that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going

3   to trial." Hill, 474 U.S. at 59.

4       **C.  The State Court Decision on Petitioner's Ineffective Assistance Claim**

5       Petitioner raised his claim that he received ineffective assistance of counsel in connection

6   with the plea bargain process in a petition for writ of habeas corpus he filed in the San Joaquin

7   County Superior Court.  (Resp't's Lod. Doc. No. 2).  In addition to his allegations contained in

8   the habeas form, petitioner attached the declaration of Cynthia C. Lie, an Assistant Federal

9   Defender who was representing him in connection with another case.  (Id.)  Attorney Lie declared

10  that she had spoken with petitioner's trial counsel on the telephone and he advised her that he had

11  no recollection of the particulars of petitioner's case, including the specifics of any conversation

12  between himself and petitioner with regard to whether the offense to which petitioner was

13  pleading guilty was a serious felony within the meaning of California's Three Strikes Law, or

14  whether either party had made an offer of settlement prior to the final plea bargain which

15  petitioner accepted.  (Id.)  Ms. Lie also declared that her efforts to refresh counsel's recollection

16  were unavailing.  (Id.)  Citing his long experience as a criminal defense attorney and as a

17  prosecutor with the District Attorney's office, petitioner's trial counsel did tell Ms. Lie that he

18  "couldn't imagine that [he] would have told [petitioner] that it wasn't a strike."  (Id.)

19      The procedure in California for addressing habeas corpus petitions is as follows.  Upon

20  review of a petition for post-conviction relief, a California Court accepts the factual allegations of

21  a petition as true and determines whether the facts alleged establish a prima facie case for relief.

22  Cal. R. Ct. 8.385(d).  In evaluating a petitioner's claim, the state courts must determine "whether

23  the *allegations* contained in the petition, viewed in the context of the trial record, established a

24  prima facie case of ineffective assistance of counsel."  Cannedy v. Adams, 706 F.3d 1148, 1160

25  (9th Cir. 2013), amended by 733 F.3d 794 (9th Cir. 2013) (emphasis in original).  The state court

26  must also "review the record of the trial . . . to assess the merits of the petitioner's claims."  Id.

27  (citations omitted).  In order to state a prima facie case, a petitioner is not required to prove his

28  claims with absolute certainty."  Nunes, 350 F.3d at 1054.

6

1    In this case, after reviewing petitioner's habeas petition the San Joaquin County Superior

2  Court concluded that petitioner had made a prima facie showing as to the first prong of the

3  Strickland analysis by demonstrating that his trial counsel's failure to correctly advise him that

4  the offense to which he was pleading guilty was a "strike" offense, constituted deficient

5  performance.  Accordingly, the court ordered respondent to file an "informal" response

6  addressing whether petitioner had suffered any prejudice as a result of his trial counsel's failure to

7  correctly advise him that the charge to which he was pleading guilty was a "strike."  Specifically,

8  the Superior Court issued the following order:

9
10
> Defense counsel represented to Petitioner that the resulting conviction would not be a serious felony or a "strike" when, in fact, it was.

11
12
13
14
15
16
17
18
> At the change of plea hearing, defense counsel represented to the court that Petitioner was willing to plead guilty to a charge of Penal Code, section 261(a)(3) – rape when a person is prevented from resisting by intoxication and this condition was known by the accused.  In its advisements to Petitioner at the time the plea was submitted to the court, the court advised, "Because it is a serious felony or violent felony conviction, you will be required to complete 85 percent of the term."  At that advisement, defense counsel stated, "No, that was not agreed upon.  That is why we found this section."  The court then asked, "This is not a strike, then?"  The prosecutor then told the court, "I don't believe so, Judge."  Accepting the representations of both the defense and the prosecution, the court then advised Petitioner, "You will be eligible for 50 percent good time/work time credits."

19
> Rape, however, is a serious felony and was deemed as such at the time of the offense.  See Penal Code, section 1192.7.

20
21
22
23
> Thus, Petitioner has made a prima facie for the first prong; that is, he has shown that "counsel's performance was deficient because the representation fell below an objective standard of reasonableness under prevailing professional norms."  In order to make a prima facie showing warranting habeas relief, however, Petitioner must also show prejudice.

24
25
26
27
28
> "When the contention is that incompetent advice led to a defendant's pleading guilty, a defendant must establish not only incompetent performance by counsel, but also a reasonable probability that, but for counsel's incompetence, the defendant would not have pleaded guilty and would have insisted on proceeding to trial."  In re Vargas (2000) 83 C.A.4th 1125, 1133-1134 citing In re Alvernaz (1992) 2 C.4th 924.  Petitioner asserts that he would not have entered a guilty plea, but for the representation that the conviction was not a serious felony or a strike.

> In light of the above allegation that Petitioner would not have pled guilty and would have insisted on a trial had he known that the offense is categorized as a serious felony and therefore, a strike, IT IS HEREBY ORDERED that Respondent, San Joaquin County District Attorney, shall file a written informal response . . . .

(Resp't's Lod. Doc. 5 at 2-3.)

In response to the Superior Court's order, respondent submitted a letter signed by Kevin A. Hicks, a Deputy District Attorney who was not the prosecutor in petitioner's case. (Resp't's Lod. Doc. 3.) In his letter Deputy D. A. Hicks informed the Superior Court that the prosecutor and petitioner's trial counsel "evidently misspoke" when they informed the trial judge that the offense to which petitioner was pleading guilty was not a "strike." Id. According to Deputy D.A. Hicks, the parties were actually representing to the court was that the charge was not a "violent" felony; therefore, petitioner would not have to complete 85 percent of his term before becoming eligible for release. Id. Hicks argued, "when they said it was not a 'strike,' what the[y] really meant was that it was not a 'violent' felony for credit purposes." Id. In support of this interpretation of what occurred at the change of plea hearing[1], Deputy D.A. Hicks noted that the context of the colloquy highlighted by petitioner was a discussion of the time credits petitioner would be entitled to receive. Id. Hicks also argued in his informal response that whether the offense to which petitioner was pleading guilty could be used as a "strike" if petitioner committed a future felony was merely a collateral consequence of petitioner's plea that his trial counsel was not required to address with him. Id. He argued that, therefore, "any misunderstanding as to the possible future collateral effects of the plea do not render it involuntary." Id. Accordingly, Hicks concluded that any failure by defense counsel to advise petitioner that he was pleading guilty to a strike offense was "patently non- prejudicial." Id. Finally, Deputy D.A. Hicks argued that petitioner could not show prejudice from any "affirmative misadvice" by his trial counsel that the charge was not a "strike" because:

> Here, defendant must prove that, had he known he'd be subject to increased penalty for a future felony, he would not have entered the plea. That is, that he fully intended to commit a future felony. Not

---

[1] There is no reason to believe that Deputy District Attorney Hicks was present at petitioner's change of plea hearing. As noted, Hicks was not the prosecutor in petitioner's case.

1    only is that a very specious statement, one questions whether a
     court of justice should even entertain it.

2

3    Id.

4          Although he wasn't asked to do so by the San Joaquin County Superior Court, petitioner

5    submitted his own brief in reply to respondent's informal response, which he signed under

6    penalty of perjury and in which he stated:

7          In deciding whether to accept the offer, petitioner asked his attorney
           whether the offense to which I would be pleading guilty was a
8          'strike,' a serious or violent felony.  Petitioner's attorney repeatedly
           assured petitioner that it was not a strike.   In addition, the
9          information in which the District Attorney charged the petitioner
           omitted the customary allegation that the offense charged was a
10         serious felony.

11   (Resp't's Lod. Doc. 4.)

12         After receiving and reviewing the respondent's informal response and petitioner's

13   unsolicited reply, the Superior Court denied habeas relief as to petitioner's claim of ineffective

14   assistance of counsel, finding that petitioner had failed to make out a prima facie case that he was

15   prejudiced by his trial counsel's deficient performance.  In this regard, the court reasoned as

16   follows:

17         Two prongs must be fulfilled in order to warrant habeas relief on an
           ineffective assistance of counsel claim.  The petitioner must show
18         that counsel's performance fell below an objective standard of
           reasonableness.  The second prong requires that petitioner establish
19         prejudice.

20         Petitioner has made a prima facie case that counsel's performance
           was deficient.  The only remaining issue is whether he has made a
21         prima facie showing of prejudice.

22         Petitioner makes the following statement, under penalty of perjury:

23         "On or about May 3, 2004, shortly before the scheduled
           commencement of trial, my attorney told me that the District
24         Attorney had made an offer to settle the case: in return for my plea
           of guilty to a violation of Penal Code, section 261(a)(3), I would
25         receive a stipulated sentence of three years imprisonment (I had at
           that time 357 days credit for time served).

26
           In deciding whether to accept the offer, I asked my attorney
27         whether the offense to which I would be pleading guilty was a
           'strike,' a serious or violent felony.  He repeatedly assured me that
28         it was not a strike.  The information in which I was charged omitted

                                                    9

any allegation that this was a serious felony.  During the plea colloquy, Judge Hammerstone characterized the offense as a 'serious felony or violent felony.'  My attorney disputed this: 'No, that was not agreed upon.  That is why we found this section.'  The judge then stated: 'This is not a strike, then?'  The prosecutor responded: 'I don't believe so, Judge.'  I learned that this was incorrect on January 25, 2008.

But for my attorney's affirmative misadvisement as to this collateral consequence of my guilty plea, I would not have accepted the plea bargain and would have exercised my right to jury trial."

Thus, the issue is whether Petitioner's declaration is enough to establish prejudice.  In re Resendiz (2001) 25 C.4th 230 is on point and the answer is no.  The Supreme Court explains:

"The test for prejudice . . . is well established.  [T]he United States Supreme Court explained that a defendant who plead guilty demonstrates prejudice caused by counsel's incompetent performance in advising him to enter the plea by establishing that a reasonably [sic] probability exists that, but for counsel's incompetence, he would not have pled guilty and would have insisted, instead, on proceeding to trial.

Petitioner specifically avers that, if counsel had informed him he would be deported as a consequence of his guilty pleas, he would not have pled guilty and would have elected to be tried . . .

The Attorney General rightly reminds us, however, that petitioner's assertion he would not have pled guilty if given competent advice, 'must be corroborated independently by objective evidence.' (Citations omitted.)  'In determining whether a defendant, with effective assistance, would have accepted [or rejected a plea] offer, pertinent factors to be considered include: whether counsel actually and accurately communicated the offer to the defendant; the advice, if any, given by counsel; the disparity between the terms of the proposed plea bargain and the probably [sic] consequences of proceeding to trial, as viewed at the time of the offer; and whether the defendant indicated he or she was amenable to negotiating a plea bargain.'

In determining whether or not a defendant who has pled guilty would have insisted on proceeding to trial had he received competent advice, an appellate court also may consider the probable outcome of any trial, to the extent that may be discerned." Ibid @ 253-254.

Petitioner filed a Traverse and as to this issue, he writes, "[n]or does the District Attorney proffer evidentiary assertions to rebut the undersigned's declaration."

Thus, the final question is whether there is something more than Petitioner's sworn statement that "but for my attorney's affirmative misadvisement as to this collateral consequence of my guilty plea, I would not have accepted the plea bargain and would have exercised

my right to jury trial."  It is certain, in light of <u>Resendiz</u>, <u>supra</u>, that the statement alone is not enough.

The only other evidence which is pertinent to this issue is:

1) Petitioner was offered 3 years with credit for time served at 357 days.  The sentence term for rape is 3 years/6 years/8 years.  See Penal Code, section 264.

2) The preliminary hearing transcript (Exhibit B to petition) indicates that there was testimony implicating a man known as "Theo" as the perpetrator; there was also evidence of a "cold DNA hit on Arquimedes Mendoza;" finally, there was a stipulation; to wit, "a DNA sample taken from this defendant [Mendoza] matched a semen swab taken from the victim in this case . . . on the date in question, July 17th, 1999."

The above evidence does not corroborate independently Petitioner's assertion that he would not have pled guilty had he known the conviction would be a "strike."

Also significant to this petition is the fact that Petitioner has picked up another strike and now has two strike convictions.  This fact was not presented as part of the petition itself, but rather, is included in Petitioner's argument in the Traverse.  It reads:

"Petitioner was particularly anxious to avoid a strike conviction because he had previously suffered a strike conviction for an offense he had committed after the date alleged for the instant offense.  The record of the plea colloquy circumstantially corroborates petitioner's assertion, in that counsel for both parties purported to correct the Court's attempt to advise Mr. Mendoza that the offense was a serious or violent felony.  The record of the plea colloquy also confirms that the District Attorney had been amenable to a non-strike disposition of the case, . . ."  <u>See</u> Traverse, page 3:11-23.

The mere fact that he was facing another strike is not necessarily significant to establish prejudice because had he proceeded to trial and been convicted, he would have had a strike against him in any event.  <u>See In re Resendiz, supra,</u> @ 254 ["While it is true that by insisting on trial petitioner would for a period have retained a theoretical possibility of evading the conviction that rendered him deportable and excludable, it is equally true that a conviction following trial would have subjected him to the same immigration consequences."].

Accordingly, the petition is denied.  Petitioner has not met his burden of making a prima facie case of prejudice.  <u>See In re Bower</u> (1985) 38 C.3d 865; <u>see also</u>, <u>In re Resendiz</u> (2001) 25 C.4th 230.

(Resp't's Lod. Doc. 6 at 1-4.)

/////

11

1    After the San Joaquin County Superior Court denied habeas relief, petitioner raised this

2    same ineffective assistance of counsel claim in habeas petitions filed in the California Court of

3    Appeal and California Supreme Court.  (Resp't's Lod. Docs. 7, 9.)  Those petitions were both

4    summarily denied.  (Resp't's Lod. Docs. 8, 10.)  The reasoned decision of the San Joaquin

5    County Superior Court is therefore the operative decision for purposes of this court's review of

6    petitioner's claim of ineffective assistance of counsel.  Ylst v. Nunnemaker, 501 U.S. 797, 805

7    (1991); Avila v. Galaza, 297 F.3d 911, 918 (9th Cir. 2002).

8          **D.  Analysis of Petitioner's Ineffective Assistance of Counsel Claim**

9          The statutory authority to issue habeas corpus relief for persons in state custody is defined

10   by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996

11   ("AEDPA") .  Section 2254(d) states:

12                 An application for a writ of habeas corpus on behalf of a
             person in custody pursuant to the judgment of a State court shall not
13           be granted with respect to any claim that was adjudicated on the
             merits in State court proceedings unless the adjudication of the
14           claim -

15                 (1) resulted in a decision that was contrary to, or involved
             an unreasonable application of, clearly established Federal law, as
16           determined by the Supreme Court of the United States; or

17                 (2) resulted in a decision that was based on an unreasonable
             determination of the facts in light of the evidence presented in the
18           State court proceeding.

19         A state court decision is "contrary to" clearly established federal law if it applies a rule

20   contradicting a holding of the Supreme Court or reaches a result different from Supreme Court

21   precedent on "materially indistinguishable" facts.  Price v. Vincent, 538 U.S. 634, 640 (2003).

22   Under the "unreasonable application" clause of § 2254(d)(1), a federal habeas court may grant the

23   writ if the state court identifies the correct governing legal principle from the Supreme Court's

24   decisions, but unreasonably applies that principle to the facts of the prisoner's case.  Lockyer v.

25   Andrade, 538 U.S. 63, 75 (2003); Williams v. Taylor, 529 U.S. 362, 413 (2000); Ocampo v. Vail,

26   649 F.3d 1098, 1106 (9th Cir. 2011); Chia v. Cambra, 360 F.3d 997, 1002 (9th Cir. 2004).

27         Section 2254(d)(2) authorizes federal habeas relief when the state-court decision was

28   "based on an unreasonable determination of the facts in light of the evidence presented in the

                                          12

1    State court proceeding." As the Ninth Circuit has noted, "such unreasonable determinations

2    'come in several flavors,' one of them being 'where the fact-finding process itself is defective.'

3    Taylor v. Maddox, 366 F.3d 992, 1000, 1001 (9th Cir. 2004)." Mike v. Ryan, 711 F.3d 998, 1007

4    (9th Cir. 2013). In the end, a state court's fact-finding process is properly found to be

5    unreasonable under § 2254(d)(2) when a reviewing court is "satisfied that any appellate court to

6    whom the defect is pointed out would be unreasonable in holding that the state court's factfinding

7    process was adequate." Mike, 711 F.3d at 1007 (quoting Taylor, 366 F.3d at 1000). See also

8    Hurles v. Ryan, 706 F.3d 1021, 1038 (9th Cir. 2013) ("We have held repeatedly that where a state

9    court makes factual findings without an evidentiary hearing or other opportunity for the petitioner

10   to present evidence, 'the fact-finding process itself is deficient' and not entitled to deference.")

11   (and cases cited therein); Taylor, 366 F.3d at 1001("If, for example, a state court makes

12   evidentiary findings without holding a hearing and giving petitioner an opportunity to present

13   evidence, such findings clearly result in an "unreasonable determination" of the facts.")

14   Likewise, "'where the state courts plainly misapprehend or misstate the record in making their

15   findings, and the misapprehension goes to a material factual issue that is central to petitioner's

16   claim, that misapprehension can fatally undermine the fact-finding process, rendering the

17   resulting factual finding unreasonable.'" Mike, 711 F.3d at 1008 (quoting Taylor, 366 F.3d at

18   1001). Under § 2254(d)(2), a state court decision based on a factual determination is not to be

19   overturned on factual grounds unless it is "objectively unreasonable in light of the evidence

20   presented in the state court proceeding." Stanley, 633 F.3d 852, 859 (9th Cir. 2011) (quoting

21   Davis v. Woodford, 384 F.3d 628, 638 (9th Cir. 2004)).

22           As noted, the San Joaquin County Superior Court concluded that petitioner had failed to

23   establish a prima facie case that he was prejudiced by his trial counsel's deficient performance.

24   For the reasons set forth below, this court finds that the Superior Court's decision in this regard

25   constituted an unreasonable application of federal law pursuant to 28 U.S.C. § 2254(d)(1) and

26   /////

27   /////

28   /////

13

1    was also based on an unreasonable determination of the facts by that state court under 28 U.S.C. §

2    2254(d)(2).[2]

3         **1.  Was the State Court Decision an Unreasonable Application of Federal Law?**

4         In order to establish prejudice, petitioner was required to show that if he had been

5    correctly advised by his trial counsel that he was pleading guilty to an offense that qualified as a

6    strike under California law he would have rejected the plea offer and proceeded to trial.  More

7    specifically, petitioner needed only to demonstrate that he had sufficient evidence for a

8    reasonable fact finder to conclude with "reasonable probability" that he would have rejected the

9    _____

10   [2]  The San Joaquin County Superior Court also determined that petitioner had presented a prima
     facie case that his trial counsel's error in advising petitioner that the charge to which he was

11   pleading guilty was not a "strike" satisfied the first prong of the Strickland test.  After receiving
     respondent's informal response, described above, the Superior Court did not revisit the deficient

12   performance of counsel issue, but rather denied petitioner habeas relief based on his failure to
     establish a prima facie case of prejudice flowing from the deficient performance of his counsel.  It

13   thus appears that the Superior Court did not adopt respondent's argument that both the prosecutor
     and petitioner's trial counsel simply "misspoke" when they told the trial court that the charge to

14   which petitioner was pleading guilty was not a "strike."  The state court record as a whole
     contains conflicting evidence, in the form of petitioner's declaration, the declaration of Assistant

15   Federal Defender Lie, and the representations of the respondent, with regard to whether petitioner
     was advised by his trial counsel that the charge to which he was pleading was not a "strike."  In

16   any event, this court agrees with the Superior Court's determination that petitioner did present a
     prima facie case that his trial counsel rendered deficient performance in this regard.  Although a

17   "mere inaccurate prediction" of the possible ramification of pleading guilty, standing alone, does
     not constitute ineffective assistance of counsel (see Iaea v. Sunn, 800 F.2d 861, 865 (9th Cir.

18   1986)), this case involves more than a "mere inaccurate prediction" or a failure to advise of a
     theoretical collateral consequence of pleading guilty.  As petitioner points out, "even if a failure

19   to advise a defendant that the offense to which he is pleading guilty is a strike were [sic] within a
     constitutionally acceptable range of competency, . . . an attorney who induces a client to plead

20   guilty based upon patently false assurances, and who does so having actual notice that these
     assurances are of importance to the defendant's decision whether to accept a plea, cannot be said

21   to be effective in his representation."  (ECF No. 34 at 2.)  It appears clear that petitioner's trial
     counsel knew that his client wanted to avoid suffering a second serious or violent felony

22   conviction.  Counsel therefore deliberately set out to find an offense to which petitioner could
     plead guilty that would satisfy his client's desire and informed petitioner that he had done so.

23   Under these circumstances, trial counsel's failure to ensure that the offense he chose was not a
     serious and violent felony strike, as he had promised, was clearly "outside the wide range of

24   professionally competent assistance."  See Iaea, 800 F.3d at 865 ("the gross mischaracterization
     of the likely outcome presented in this case, combined with the erroneous advice on the possible

25   effects of going to trial, falls below the level of competence required of defense attorneys.").
     Constitutionally effective counsel must competently assess a defendant's sentencing exposure and

26   disclose the exposure to the defendant.  See Hill, 474 U.S. at 56-58; Turner, 281 F.3d at 881.

27

28
                                          14

1   plea offer if he had been correctly advised, a probability "sufficient to undermine the result."

2   Strickland, 466 U.S. at 694.   With petitioner's factual allegations being accepted as true, as the

3   state court was bound to do when determining whether he had established a prima facie case for

4   relief, petitioner had established that: (1) his attorney gave him erroneous information about the

5   nature of the charge to which he was pleading guilty, and (2) if he had been accurately informed

6   he would not have accepted the plea offer but would have proceeded to trial.   These assertions are

7   sufficient to support an ineffective assistance claim, including the prejudice prong of the

8   Strickland analysis.

9           In addition to the factual allegations contained in petitioner's state habeas petition, the

10   record before the San Joaquin County Superior Court provided ample support for petitioner's

11   assertion that he would have rejected the plea offer if he had known he was required to plead

12   guilty to a "strike."   First, throughout the state court proceedings petitioner had consistently

13   demonstrated that he was not willing to plead guilty to a "strike" offense.   It is notable that

14   petitioner did not agree to plead guilty until the eve of his scheduled jury trial when for the first

15   time a plea bargain that included a plea to a non-strike offense was offered to him.[3]   The

16   transcript of the change of plea hearing also reinforces petitioner's contention that he was not

17   willing to plead guilty to a "strike" offense.   It is clear from the transcript of that hearing that

18   petitioner's trial counsel and the prosecutor understood that petitioner was unwilling to plead to a

19   strike and that they structured the last-minute plea deal accordingly.   Further, the fact that

20   petitioner had already suffered a strike conviction and understood the consequences of suffering

21   another, lends credibility to his claim that he was insisting on avoiding another strike conviction.

22   As stated by petitioner in his traverse, "The record makes clear that it was the charge bargained

23   for – including trial counsel's false assurance that the charge was not a strike offense – that was

24   crucial to the plea on the eve of trial."   (ECF No. 34 at 1.)

25   [3]    The record reflects that this case was pending for approximately eight months in the San

26   Joaquin County Superior Court from petitioner's initial appearance on September 8, 2003 until
his guilty plea and sentencing took place on May 3, 2004.   The record reflects numerous court

27   appearances in the case, including the preliminary examination on October 8, 2003, at which plea
discussions may have taken place.   (See e.g., Resp't's Lod. Doc. entitled "Clerk's Transcript" at

28   consecutive pgs. 8-11, 32-24, 37-42.)

15

1    Finally, it is at least arguable that petitioner had a reasonable chance of prevailing at trial,

2    given that a witness at the scene of the crime identified someone other than petitioner as the

3    perpetrator of the rape.  (See Pet., Exh. B at 20-21.)  Although petitioner's DNA was present on a

4    swab taken from the victim, petitioner had contended that his contact with the victim and other

5    persons at the scene could have easily resulted in an inadvertent transfer of DNA to the victim.

6    Petitioner's conviction at trial under these circumstances cannot fairly be characterized as

7    inevitable.

8    Accordingly, accepting petitioner's allegations as true, he clearly stated a prima facie

9    case of prejudice – that absent his trial counsel's faulty advice he would not have pled guilty but

10   would have insisted on going to trial.  Both the petition itself and the state court record as a whole

11   supported petitioner's claim in this regard.  The decision of the California Superior Court that

12   petitioner had not demonstrated a prima facie case of prejudice under Strickland therefore applied

13   clearly established federal law to the facts of this case unreasonably under § 2254(d)(1).  As the

14   Ninth Circuit has observed under similar circumstances:

15
        [Petitioner] needed only to demonstrate that he had sufficient
16      evidence for a reasonable fact finder to conclude with "reasonable
        probability" that he would have accepted the plea offer, a
17      probability "sufficient to undermine the result" (Strickland, 466
        U.S. at 694, 104 S. Ct. 2052).  He met that burden, and to the extent
18      that the state court demanded more it applied the Strickland test
        unreasonably.  In other words, it was objectively unreasonable for
19      the state court to conclude on the record before it that no reasonable
        factfinder could believe that [petitioner] had been prejudiced.

20   Nunes, 350 F.3d at 1054-55.  See also Cannedy, 706 F.3d at 1160-61, 1166 (Petitioner's

21   allegations in his state habeas petition that his trial counsel rendered ineffective assistance was

22   sufficient to state a prima facie case for relief and "no reasonable argument supports the state

23   court's determination that Petitioner suffered no prejudice.")

24   It was objectively unreasonable for the state court to conclude on the record before it that

25   no reasonable factfinder could believe that petitioner had been prejudiced by his trial counsel's

26   deficient performance.  As stated by the Ninth Circuit in Nunes, "with the state court having

27   purported to evaluate Nunes' claim for sufficiency alone, it should not have requires Nunes to

28   prove his claim without affording him an evidentiary hearing – and it surely should not have

16

1  required Nunes to prove his claim with absolute certainty." <u>Nunes</u>, 350 F.3d at 1054.  <u>See</u> <u>also</u>

2  <u>Lambert v. Blodgett</u>, 393 F.3d 943, 968 n.14 (9th Cir. 2004).

3      For all of these reasons the court concludes that the San Joaquin County Superior Court's

4  decision was based on an unreasonable application of federal law and is therefore not entitled to

5  deference in this federal habeas corpus proceeding.  <u>See</u> 28 U.S.C. § 2254(d)(1).

6      **2.  Whether the State Court made an Unreasonable Determination of the Facts**

7      The San Joaquin County Superior Court's conclusion that petitioner failed to establish a

8  prima facie case of prejudice under <u>Strickland</u> was also based on an unreasonable determination

9  of the facts of this case pursuant to 28 U.S.C. § 2254(d)(2).  As noted above, the Superior Court

10  found, as a matter of state law, that petitioner's sworn statement was not sufficient, without more,

11  to demonstrate prejudice.[4]  That court also concluded that nothing in the record served to

12  corroborate petitioner's assertion that he would have proceeded to trial had he known that the plea

13  bargain offer he had accepted required him to plead guilty to a strike despite the assurances to the

14  contrary.  Specifically, the Superior Court relied on the following facts:  (1) petitioner was offered

15  a plea bargain calling for a three year prison term with credit for time served; (2) the sentence for

16  rape is "3 years/6 years/8 years;" (3) the preliminary hearing transcript indicated an eyewitness

17  had implicated someone other than petitioner as the perpetrator of the rape; (4) there was

18  evidence of a cold DNA hit implicating petitioner, and (5) petitioner's DNA matched a semen

19  _____

20  [4]  In federal court, "[s]elf-serving statements by a defendant that his conviction was
21  constitutionally infirm are insufficient to overcome the presumption of regularity accorded state
    convictions."  <u>Turner</u>, 281 F.3d at 881.  Several circuit courts have concluded that a habeas
22  petitioner must show some objective evidence other than his unsupported assertions to establish
    that he suffered prejudice in the context of ineffective assistance of counsel claims during the plea
23  bargain process.  <u>See</u> <u>Pham v. United States</u>, 317 F.3d 178, 182 (2d Cir. 2003) (although "our
    precedent requires some objective evidence other than defendant's assertions to establish
24  prejudice," a "significant sentencing disparity in combination with defendant's statement of his
    intention is sufficient to support a prejudice finding"); <u>Toro v. Fairman</u>, 940 F.2d 1065, 1068 (7th
25  Cir. 1991) (requiring "objective evidence" that a petitioner would have accepted a plea offer);
    <u>Diaz v. United States</u>, 930 F.2d 832, 835 (11th Cir. 1991) (petitioner's "after the fact testimony
26  concerning his desire to plead, without more, is insufficient to establish that but for counsel's
    alleged advice or inaction, he would have accepted the plea offer).  As detailed above, in this
27  case, however, several matters of record at the very least provide circumstantial support for
    petitioner's own claim.
28

swab taken from the victim.  (Resp't's Lod. Doc. 6 at 3.)  The Superior Court concluded that

those facts did not support petitioner's assertion that he would have proceeded to trial had he

known he was pleading guilty to a strike offense.  However, there is absolutely no indication in

the record before this court that petitioner's decision to plead guilty on the eve of jury trial was

motivated by the agreed-upon sentence rather than the non-strike nature of the charge.  Further,

there is nothing in the record to support any suggestion of the possible imposition of an enhanced

sentence beyond the statutory minimum had petitioner not agreed to plead guilty.  Any factual

conclusion to the contrary is not supported by the facts before the Superior Court.  Rather, the

only consideration raised on the record was the defense concern that the charge the defendant was

pleading to was not a serious or violent felony under California's Three Strikes Law.  Nor do the

other facts cited by the Superior Court establish that petitioner's conviction after a trial was

necessarily likely.

On the other hand, the Superior Court ignored those parts of the record that supported

petitioner's allegation that he was not willing to plead guilty to a strike offense and that the

prosecutor and defense counsel had structured the plea deal to avoid that outcome.  Petitioner's

sworn affidavit supported his contention that he would not have pled guilty if he had known the

offense to which he was pleading guilty was a strike.  Again, as the Ninth Circuit has held, "it is

unacceptable for the Superior Court to have "eschewed an evidentiary hearing on the basis that it

was accepting [petitioner's] version of the facts, then to have given the lie to that rationale by

discrediting [petitioner's] credibility and rejecting his assertions."  Nunes, 350 F.3d at 1055 n.7.

Based upon his sworn affidavit, the objective facts in the record, and the colloquy at his

change of plea hearing, petitioner has consistently shown that he was willing to plead guilty only

if the plea did not cause him to suffer another strike conviction.  He has certainly demonstrated a

reasonable probability that, but for his trial counsel's deficient advice, he would have rejected the

offer and proceeded to trial.  Id. at 1054.  The state court unreasonably faulted petitioner for

/////

/////

/////

18

1    failing to corroborate his allegations of prejudice without allowing him the opportunity to do so at

2    an evidentiary hearing.[5]

3           In sum, although the San Joaquin County Superior Court did not necessarily misstate the

4    record before it, it relied only on a portion of the record to support its conclusion that petitioner

5    had failed to demonstrate a prima facie case of prejudice and ignored other parts of the record that

6    supported petitioner's contention that he would have proceeded to trial if he had been accurately

7    advised of the consequences of his guilty plea.  Essentially, the Superior Court decided petitioner

8    would not have elected to proceed to trial even if he had been correctly advised about the nature

9    of the offense to which he was pleading without any evidence to support that conclusion and in

10   the face of circumstances suggesting to the contrary.  Under these circumstances it was

11   unreasonable for the Superior Court to reject petitioner's assertions without engaging in further

12   fact-finding.  At the very least, it was unreasonable for the state court to have denied petitioner

13   the opportunity to further develop the record where the record as it already stood was clearly

14   consistent with his allegations.

15          Deference to a state court's factual findings under AEDPA is warranted only if the court's

16   fact-finding process survives the dictates of § 2254(d)(2).  In other words, the state court decision

17   must not be "based on an unreasonable determination of the facts."  28 U.S.C. § 2254(d)(2).  See

18   also Miller-El v. Cockrell, 537 U.S. 322, 340 (2003) ("deference does not imply abandonment or

19   abdication of judicial review.")  Here, the California Superior Court's conclusion that petitioner

20   failed to establish a prima facie case of prejudice unreasonably ignored those parts of the record

21   that supported petitioner's allegations of prejudice stemming from the performance it had already

22   found to be deficient.  As stated in Nunes, "[w]hile there may be instances where the state court

23

24   ───────────────
     [5]  The Superior Court also took into consideration the fact that petitioner would have suffered
25   another strike conviction in any event if he had gone to trial and been convicted.  See In re
     Resendiz, 25 Cal.4th 230, 254 (2001), abrogated on other grounds in Padilla v. Kentucky, 559
26   U.S. 356 (2010) (taking into consideration "the probable outcome of any trial, to the extent that
     may be discerned" when considering whether a petitioner who pled guilty would have insisted on
27   proceeding to trial had he received competent advice).  Here, however, it cannot reliably be
     discerned that a jury would have convicted petitioner in light of evidence that someone other than
28   petitioner had been identified as the perpetrator of the rape.

                                                    19

1  can determine without a hearing that a criminal defendant's allegations are entirely without

2  credibility or that the allegations would not justify relief even if proved, that was certainly not the

3  case here." Nunes, 350 F.3d at 1055.

4      For all of these reasons, this court concludes that the Superior Court's decision rejecting

5  petitioner's ineffective assistance of counsel claim due to a failure to establish a prima facie case

6  of prejudice was based on an unreasonable determination of the facts of this case and is not

7  entitled to deference in this federal habeas proceeding.  See 28 U.S.C. § 2254(d)(2).

8  **II.  Whether to Hold an Evidentiary Hearing**

9      Having established that the state court's decision addressing petitioner's ineffective

10  assistance of counsel claim was both an unreasonable application of federal law and was based on

11  an unreasonable determination of the facts, the court turns to the issue of whether an evidentiary

12  hearing in this federal habeas action is appropriate.

13      Prior to the enactment of AEDPA, the decision to grant an evidentiary hearing on claims

14  raised in a habeas petition was "generally left to the sound discretion of district courts."  Schriro

15  v. Landrigan, 550 U.S. 465, 473 (2007).  AEDPA did not change that basic rule.  Id.  However,

16  28 U.S.C. § 2254(e)(2) does set forth certain limits on the holding of an evidentiary hearing:

17
18      (e)(2) If the applicant has failed to develop the factual basis of a
        claim in State court proceedings, the court shall not hold an
        evidentiary hearing on the claim unless the applicant shows that-

19          (A) the claim relies on-

20              (i) a new rule of constitutional law, made retroactive to
21          cases on collateral review by the Supreme Court, that was
            previously unavailable; or

22              (ii) a factual predicate that could not have been previously
            discovered through the exercise of due diligence; and
23

24              (B) the facts underlying the claim would be sufficient to
            establish by clear and convincing evidence that but for
25          constitutional error, no reasonable fact finder would have found the
            applicant guilty of the underlying offense.

26      Under this statutory scheme, a district court presented with a request for an evidentiary

27  hearing must first determine whether a factual basis exists in the record to support a petitioner's

28  claims and, if not, whether an evidentiary hearing "might be appropriate."  Baja v. Ducharme,

20

1   187 F.3d 1075, 1078 (9th Cir. 1999).  See also Earp v. Ornoski, 431 F.3d 1158, 1166 (9th Cir.

2   2005); Insyxiengmay v. Morgan, 403 F.3d 657, 669-70 (9th Cir. 2005).  If, as here, the facts do

3   not exist or are inadequate and an evidentiary hearing might therefore well be appropriate, the

4   court must nonetheless determine whether the petitioner has "failed to develop the factual basis of

5   a claim in State court."  28 U.S.C. § 2254(d); Landrigan, 550 U.S. at 474 n.1.  See also

6   Insyxiengmay, 403 F.3d at 669-70.  A petitioner will only be charged with a "failure to develop"

7   the facts if "there is lack of diligence, or some greater fault, attributable to the prisoner or the

8   prisoner's counsel."  Williams, 529 U.S. at 437 ("comity is not served by saying a prisoner 'has

9   failed to develop the factual basis of a claim' where he was unable to develop his claim in state

10  court despite diligent effort.").  See also Cooper-Smith v. Palmateer, 397 F.3d 1236, 1241 (9th

11  Cir. 2005) ("[A]n exception to this general rule exists if a petitioner exercised diligence in his

12  efforts to develop the factual basis of his claims in state court proceedings.").  The petitioner must

13  have "made a reasonable attempt, in light of the information available at the time, to investigate

14  and pursue claims in state court."  Williams, 529 U.S. at 435.

15          Here, petitioner has satisfied the diligence requirement for the following reasons.  Under

16  California law, if a petitioner alleges facts showing a prima facie case, the state court must issue

17  an order to show cause, and may order an evidentiary hearing.  Cannedy, 706 F.3d at 1160-61;

18  see also People v. Duvall, 9 Cal.4th 464, 473 (1995) (if the court finds the petitioner's factual

19  allegations, taken as true, establish a prima facie case for relief, the court will issue an OSC).  A

20  petitioner in California courts must obtain a show cause order before he can request an

21  evidentiary hearing.  People v. Romero, 8 Cal.4th 728, 739 (1994) (a California court does not

22  decide whether to hold an evidentiary hearing until after it receives the return and traverse

23  required by a show cause order).  "If the state court denies the petition without ordering formal

24  pleadings, the case never reaches the stage where an evidentiary hearing must be requested and

25  the petitioner's failure to request a hearing . . . does not trigger § 2254(e)(2)."  Skains v. Yates,

26  No. Civ. S-06-0127 LKK GGH P, 2008 WL 2682512 at *1 (E.D. Cal June 30, 2008) (citing

27  Horton v. Mayle, 408 F.3d 570, 582 n.6 (9th Cir. 2005) .

28  /////

21

1    Here, the San Joaquin County Superior Court requested only an "informal" response from

2    the respondent.  This court will assume that the Superior Court requested this "informal" response

3    pursuant to Rule 8.385(b) of the California Rules of Court which provides that "before ruling on

4    the petition, the court may request an informal written response from the respondent, the real

5    party in interest, or an interested person."  The Superior Court did not issue an order to show

6    cause nor ordered formal briefing from the parties pursuant to California Rules of Court, Rule

7    8.385(d) ("If the petitioner has made the required prima facie showing that he or she is entitled to

8    relief, the court must issue an order to show cause").  It appears that the state court requested

9    informal briefing in this case in order to determine whether petitioner had demonstrated a prima

10   facie case of prejudice flowing from the ineffective assistance he received from his counsel.

11   After receiving the informal response the Superior Court concluded that petitioner had not shown

12   a prima facie case of prejudice and declined to issue an order to show cause.  There is no other

13   plausible interpretation of the Superior Court's actions given that court's express statement that

14   petitioner had failed to make out a prima facie case of prejudice.

15        Thus, while ordinarily the exercise of diligence may require a petitioner to seek an

16   evidentiary hearing in state court in the manner prescribed by state law, because in this case

17   petitioner never reached the stage of the state proceeding at which an evidentiary hearing could be

18   requested, no lack of diligence on his part has been established.  See Horton, 408 F.3d at 582 n. 6

19   (discussing § 2254(e)(2)) in the context where the petitioner did not reach the stage of state court

20   proceedings where an evidentiary hearing should be requested and concluding that "he has not

21   shown a lack of diligence at the relevant stages of the state court proceedings."); Coleman v.

22   Sisto, No. 2:09-cv-0020 DAD, 2012 WL 6020095, at *29 (E.D. Cal. Dec. 3, 2012); Boutte v.

23   Biter, No. 2:07-cv-01508-AK, 2012 WL 4747245, 3 (E.D. Cal. Oct. 4, 2012) ("All of Boutte's

24   petitions were dismissed before he reached the traverse stage, so his failure to request a hearing

25   does not amount to a lack of diligence."); Neely v. Director, No. CIV S-08-1416 KJM P, 2010

26   WL 1267808 at *3 (E.D. Cal. March 31, 2010) ("If section 2254(e)(2) imposes a diligence

27   requirement . . ., petitioner has satisfied it" because "the state courts denied the petition without

28   issuing an order to show cause" and the state habeas proceedings therefore "never reached the

22

1    stage at which petitioner could request an evidentiary hearing[.]")  Under 28 U.S.C.  2254(e)(2),

2    an evidentiary hearing for the purpose of resolving factual disputes of petitioner's claim of

3    ineffective assistance of counsel is therefore appropriate because petitioner was diligent in his

4    efforts in state court.

5         The next step in determining whether an evidentiary hearing is appropriate is to consider

6    whether the petitioner has shown a "colorable claim for relief and has never been afforded a state

7    or federal hearing on this claim."  Earp, 431 F.3d at 1167 (citing Insyxiengmay, 403 F.3d at 670,

8    Stankewitz v. Woodford, 365 F.3d 706, 708 (9th Cir. 2004) and Phillips v. Woodford, 267 F.3d

9    966, 973 (9th Cir. 2001)).  To show that a claim is "colorable," a petitioner is "required to allege

10   specific facts which, if true, would entitle him to relief."  Ortiz v. Stewart, 149 F.3d 923, 934 (9th

11   Cir. 1998) (internal quotation marks and citation omitted).  As described above petitioner has

12   satisfied this requirement because the allegations set forth in the habeas petition before this court

13   raise a colorable or prima facie claim for relief.  If petitioner proves his allegations of ineffective

14   assistance of counsel, he would be entitled to federal habeas relief.  Hill, 474 U.S. at 59.

15        In Cullen v. Pinholster, ___ U.S. ___, 131 S. Ct. 1388 (2011), the United States Supreme

16   Court held that federal review of habeas corpus claims under § 2254(d) is "limited to the record

17   that was before the state court that adjudicated the claim on the merits."  131 S. Ct. at 1398.

18   Accordingly, an evidentiary hearing in federal court on a claim that was adjudicated on the merits

19   in state court is appropriate only if a petitioner can overcome the limitation of § 2254(d) on the

20   record that was before that state court.  Id. at 1400.  Here, as discussed above, petitioner has

21   overcome the limitation of §§ 2254(d)(1) and (d)(2) on the record that was before the state court.

22   Accordingly, this federal habeas court is not prevented from taking evidence with respect to

23   petitioner's claim of ineffective assistance of counsel.  See Williams v. Woodford, 859 F.Supp.2d

24   1154, 1161 (E.D. Cal. 2012) ("Pinholster isn't relevant where, as here, petitioner surmounts

25   section 2254(d) because he was not allowed to develop the record in state court.")[6]; see also Dunn

26   v. Swarthout, No. 2:11-cv-2731 JAM GGH P, 2013 WL 4654550, at *8-12 (E.D. Ca. Aug. 29,

27   _____

28   [6]  Williams v. Woodford was decided by Chief Judge Alex Kozinski of the Ninth Circuit Court of
     Appeals, sitting by designation in this court.

1   2013); Coleman v. Sisto, No. 2:09-cv-0020 DAD, 2012 WL 6020095, at *30 (E.D. Cal. Dec. 3,

2   2012); Lor v. Felker, 2012 WL 1604519, at *11-13 (E.D. Cal. May 7, 2012).

3          The San Joaquin County Superior Court's decision that petitioner failed to demonstrate a

4   prima facie case of  prejudice with respect to his ineffective assistance of counsel claim was

5   rendered without the benefit of sufficient evidence necessary to support that decision.  Whether

6   petitioner's allegations are in fact true or not has never been determined.  However, his

7   allegations with respect to prejudice are certainly plausible and, if true, they would entitle him to

8   federal habeas relief.  Nonetheless, evidence is required in order to determine whether but for the

9   erroneous advice given him by his trial counsel regarding the nature of the charge which was the

10  subject of the plea offer, petitioner would not have pleaded guilty and would have instead insisted

11  on proceeding with the jury trial that was about to begin.  Petitioner's claim that he suffered

12  prejudice as a result of his trial counsel's ineffective assistance cannot be resolved in this case by

13  reference to the state court record because that record does not reflect the facts necessary to

14  resolve that claim.  The record before the state court leaves significant questions unanswered

15  about any discussions between petitioner, his trial counsel and the prosecutor with respect to the

16  plea bargain process and/or whether petitioner was offered plea bargains prior to the first day of

17  trial but refused to accept them because he would have been required to plead guilty to a "strike"

18  offense.[7]

19                                              CONCLUSION

20         Accordingly, for the reasons set forth above, the requirements for an evidentiary hearing

21  in this federal habeas action are satisfied.  Petitioner has demonstrated that the state court's denial

22  of habeas relief without providing him the opportunity to request an evidentiary hearing was

23  unreasonable, and he has done so on the basis of the record that was before the state court.

24  /////

25

26  [7]  The absence of any evidence as to whether such discussions took place establishes that the
    Superior Court's failure to conduct an evidentiary hearing "violated petitioner's right to a fair

27  process for developing the record supporting his claim, in violation of Taylor [v. Maddox] and
    Hurles [v. Ryan]."  Williams, 859 F. Supp.2d at 1159.

28

1   Accordingly, this court will schedule an evidentiary hearing to determine whether petitioner is

2   entitled to federal habeas relief.

3                 IT IS HEREBY ORDERED that:

4                 1.  Petitioner's amended motion for discovery and to expand the record (Doc. No.

5   58) is granted in part and an evidentiary hearing is set for April 21, 2014 at 10:00 a.m. in

6   Courtroom 27.[8]

7                 2.  The evidentiary hearing will be limited to petitioner's claim that he received

8   ineffective assistance as a result of his trial counsel's failure to advise him that the charge to

9   which he pled guilty was a "strike" under California's Three Strikes law and was prejudiced by

10  his counsel's ineffective performance; and

11                3.  Petitioner's request for discovery and to expand the record is denied in all other

12  respects.

13  Dated:  January 24, 2014

14

15  _____

16  DALE A. DROZD
    UNITED STATES MAGISTRATE JUDGE

17  DAD:8
    Mendoza1710.eh

18

19

20

21

22

23

24

25

26

---

27  [8]  If this date is not available, convenient or satisfactory to the parties, counsel are directed to
    meet and confer, consult with Courtroom Deputy Pete Buzo and then file a stipulation and

28  proposed order resetting the evidentiary hearing to an agreed upon available date.