1
2
3
4
5
6
7
UNITED STATES DISTRICT COURT

8
FOR THE EASTERN DISTRICT OF CALIFORNIA

9

10
ARQUIMEDES MENDOZA,                         No. 2:09-cv-1710 MCE DB P

11
        Petitioner,

12
  v.                                                      FINDINGS AND RECOMMENDATIONS

13
MATTHEW CATE,

14
        Respondent.

15

16
      Petitioner is a state prisoner proceeding through counsel with a petition for a writ of

17
18
habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner challenges a 2004 judgment of conviction

19
for rape of an intoxicated person in violation of California Penal Code § 261(a)(3), which was

20
entered in the San Joaquin County Superior Court pursuant to his guilty plea.  Petitioner raises

21
two grounds for federal habeas relief: (1) ineffective assistance of counsel in the negotiation and

22
entry of his guilty plea based on counsel's misrepresentation that the conviction to which he was

23
24
pleading guilty was not a "strike" under California's Three Strikes Law; and (2) ineffective

25
assistance of counsel in failing to investigate and challenge the validity of the prosecutor's DNA

26
evidence.

27
      For the reasons set forth below, the undersigned will recommend that the petition be

28
granted.

# I.       Relevant Procedural History

## A.       Petitioner's State Conviction

On July 31, 2003, a complaint was filed in the San Joaquin County Superior Court charging petitioner with violating California Penal Code § 261(a)(3), sexual intercourse with a person prevented from resisting by virtue of intoxication, for conduct occurring on July 17, 1999. (Resp.'t's Lod. Doc. 11.) An arrest warrant was issued, and petitioner was arrested on or around September 8, 2003. (Resp't's Lod. Doc. entitled "Clerk's Transcript" ("CT") at consecutive pages pgs. 42-44.) Petitioner entered a plea of not guilty. (See id.)

On October 1, 2003, an information was filed charging petitioner with four counts: (1) one count of rape of an intoxicated person in violation California Penal Code § 261(a)(3), (2) one count of unlawful intercourse with a minor three years younger in violation of California Penal Code § 261.5(c), and (3) two counts of resisting arrest in violation of California Penal Code § 148. (Resp.'t's Lod. Doc. 12.)

On October 8, 2003, a preliminary hearing was held where witness testimony was taken. (Resp.'t's Lod. Doc. 2 Ex. B.)

On May 3, 2004, petitioner entered into a plea deal and plead guilty to one count of violating § 261(a)(3). Resp.t's Lod. Doc. 1. All other charges were dismissed, and petitioner was sentenced to 3 years with credit for time served.[1] Id.

## B.       Petitioner's Federal Habeas Petition

Petitioner filed the pending habeas petition on June 22, 2009. Respondent filed an answer on January 23, 2012, and petitioner filed a traverse on February 24, 2012.

On August 1, 2012, this court appointed counsel for petitioner. Following this appointment, petitioner filed a motion for discovery and/or expansion of the record. At the

---

[1] Petitioner has since been released from custody. Following this release, he was deported to Mexico where he now resides permanently. (See Resp't's MTD [ECF No. 73] at 2 n.2.)

2

October 25, 2013, hearing on that motion, counsel for petitioner stated that he was also seeking an evidentiary hearing on his claim of ineffective assistance of counsel during the plea bargain process in state court.

By order dated January 27, 2014, petitioner's motion was granted only as to the evidentiary hearing, which was set for April 21, 2014. (ECF No. 61.) That hearing date was then vacated on respondent's request pending the filing and disposition of a motion to dismiss. (ECF Nos. 70, 72.) On April 21, 2014, respondent filed a motion to dismiss, which was ultimately denied on March 11, 2015. (ECF Nos. 73, 79, 84.)

Following resolution of respondent's motion to dismiss, the evidentiary hearing was rescheduled and then continued multiple times. It was first reset for June 8, 2015. (ECF No. 85.) It was then continued and ultimately vacated following the elevation of the then-assigned magistrate judge to the position of District Judge. (ECF No. 91.) Following this action's temporary reassignment to Magistrate Judge Allison Claire, the evidentiary hearing was rescheduled for July 25, 2016, but then continued on petitioner's request. (ECF No. 100.) Finally, on reassignment to the undersigned, the evidentiary hearing was scheduled for October 3, 2016 (ECF No. 102), continued to February 27, 2018 (ECF No. 104), and ultimately vacated entirely on February 24, 2017 (ECF No. 108).

This final order vacating the evidentiary hearing was based on a status report filed by petitioner's counsel, who noted that, despite his best efforts, he was unable to communicate with trial counsel and unable to access the trial file before trial counsel's death in December 2016. (ECF No. 105.) Petitioner's counsel also noted that the deposition of the trial judge proved unhelpful, and he was not hopeful that the prosecuting attorney during petitioner's change of plea hearing could add more than was previously submitted to the state superior court. (Id.) Based on this report and respondent's concurrence that a hearing would be unhelpful, the undersigned

vacated the evidentiary hearing but directed the parties to submit further merit briefs. (ECF No. 108.) Those briefs have now been filed, and this case is ready for disposition. (ECF Nos. 113, 115.)

## II.    Petitioner's Claim of Ineffective Assistance of Counsel in Plea Negotiations

### A.    Description of Petitioner's Claim

In his first claim for relief, petitioner contends that his guilty plea was not knowingly or voluntarily entered because he was denied the effective assistance of counsel in plea negotiations and in the entry of his guilty plea. (Petition (ECF No. 1) at 6.) Petitioner explains that he did not want to plead guilty to an offense that would be considered a "strike" under California's Three Strikes Law because he had suffered a strike conviction on another unrelated charge after he was charged with the instant offense, and he wanted to avoid a second strike. Accordingly, during the plea negotiations he repeatedly asked his trial counsel if the offense to which he was pleading guilty would be considered a strike. Petitioner alleges that his attorney assured him that the charge to which he was pleading guilty did not qualify as a strike under California law and that his counsel even emphasized that very point on the record at the change of plea hearing. (Id.) The following exchange at the plea hearing provides evidence supporting petitioner's allegation in this regard:

> MR. HICKEY [Petitioner's Counsel]:  He is prepared this morning to resolve his case.  I have been in discussion with Mr. Brooks.  We have come up with a section that is fine as to his conduct; sex with a woman who is passed out.  So we'll enter a plea to 261(a)(3) for a period of three years.
>
> * * *
>
> MR. HICKEY:  We want to make sure the subsection is correct, because it does make a difference.
>
> THE COURT:  261(a)(3).
>
> MR. BROOKS [Deputy District Attorney]:  Correct.

4

* * *

THE COURT:  Having each of your rights in mind then, how do you plead to Count 1, a violation of Section 261(a)(3) of the Penal Code, a rape by use of drugs, a felony, occurring July 17, 1999?

THE DEFENDANT:  Guilty.

* * *

THE COURT:  Because it is a serious felony or violent felony conviction, you will be required to complete 85 percent of the term.

MR. HICKEY [Petitioner's Counsel]:  No, that was not agreed upon.  That is why we found this section.

THE COURT: This is not a strike, then?

MR. BROOKS [Deputy District Attorney]:  I don't believe so, Judge.

THE COURT:  All right.  You will be eligible for 50 percent good time/work time credits.  Do you understand that?

THE DEFENDANT: Yes.

(Id. at 82, 85-86.)  In fact, however, the charge to which petitioner pled guilty constituted a "strike" under California's Three Strikes Law.

Petitioner states that he would not have accepted the prosecution's plea offer if he had known that the offense to which he was pleading guilty was a strike.  (Pet. at 6.)  He explains that if his trial counsel was unable to negotiate a plea to a non-strike offense, then he would have proceeded to trial.  (Id.)  In support of this contention, petitioner argues that the case against him was weak.  (Id.)  He states that "the only eyewitness named a person other than myself as the man she had observed initiating sexual relations with the unconscious victim." (Id.) Petitioner also argues that he did not match the physical description of the perpetrator as described by the eyewitness and that the only evidence implicating him in the commission of the offense was a "cold hit" with California's DNA database. (Id.) He contends that, even if his DNA was present in the evidence sample, this was not

////

5

> inconsistent with the theory, argued by my attorney at the preliminary hearing, that my presence in the room where the offense occurred and my non-criminal contact with both the victim and the perpetrator shortly before the offense could have accounted for the presence of my DNA in the evidence sample through inadvertent transfer and/or non-sexual contact.

(Id.)

Petitioner explains that he would not have agreed to plead guilty to a "strike" offense "when I already had one strike prior, and the only direct evidence [of petitioner's guilt] was both subject to challenge and also subject to an alternative exculpatory interpretation." (Pet. at 6.) He notes that at the change of plea hearing his attorney explained that the parties had specifically chosen the charge to which he would plead guilty because it made "a difference." (Id. at 11.) Petitioner also notes that the prosecutor was willing to allow him to plead guilty to a non-strike offense. (Id.) Petitioner argues that the colloquy at his change of plea hearing itself corroborates his declaration that he would have proceeded to trial if he had known that the charge to which he was pleading guilty was a strike. (Traverse (ECF No. 34) at 4.) He contends that the non-strike character of the plea was what made the plea offer "new and better than what had previously been possible." (Id.) Finally, petitioner observes that respondent has not submitted a declaration from petitioner's trial counsel or from the prosecutor "that would counter either Mr. Mendoza's account or the record of the plea hearing." (Id. at 5.)

### B.     Legal Standards Applicable to Claims of Ineffective Assistance of Counsel

To support a claim of ineffective assistance of counsel, a petitioner must first show that, considering all the circumstances, counsel's performance fell below an objective standard of reasonableness. Strickland v. Washington, 466 U.S. 668, 687-88 (1984). After a petitioner identifies the acts or omissions that are alleged not to have been the result of reasonable professional judgment, the court must determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance.

Id. at 690; Wiggins v. Smith, 539 U.S. 510, 521 (2003). Second, a petitioner must establish that he was prejudiced by counsel's deficient performance. Strickland, 466 U.S. at 693-94. Prejudice is found where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." Id.

The Strickland standards apply to claims of ineffective assistance of counsel involving counsel's advice offered during the plea bargain process. Missouri v. Frye, 566 U.S. 134 (2012); Lafler v. Cooper, 566 U.S. 156 (2012); Padilla v. Kentucky, 559 U.S. 356 (2009); Hill v. Lockhart, 474 U.S. 52, 58 (1985); Nunes v. Mueller, 350 F.3d 1045, 1052 (9th Cir. 2003). "A defendant has the right to make a reasonably informed decision whether to accept a plea offer." Turner v. Calderon, 281 F.3d 851, 880 (9th Cir. 2002) (citations omitted). Trial counsel must give the defendant sufficient information regarding a plea offer to enable him to make an intelligent decision. Id. at 881. "[W]here the issue is whether to advise the client to plead or not 'the attorney has the duty to advise the defendant of the available options and possible consequences' and failure to do so constitutes ineffective assistance of counsel." United States v. Blaylock, 20 F.3d 1458, 1465 (9th Cir. 1994) (quoting Beckham v. Wainwright, 639 F.2d 262, 267 (5th Cir.1981)). The relevant question is not whether "counsel's advice [was] right or wrong, but . . . whether that advice was within the range of competence demanded of attorneys in criminal cases." McMann v. Richardson, 397 U.S. 759, 771 (1970). This court must review for objective unreasonableness the state court's conclusions as to whether counsel's performance was deficient or resulted in prejudice. Weaver v. Palmateer, 455 F.3d 958, 965 n.9 (9th Cir. 2006) (citing Lambert v. Blodgett, 393 F.3d 943, 978 (9th Cir. 2004)). The state court's underlying factual determinations are reviewed for unreasonableness in light of the record evidence. Id.

////

7

A defendant may attack the voluntary and intelligent character of his plea by showing that he received incompetent advice from counsel in connection with the plea. Tollett v. Henderson, 411 U.S. 258, 267 (1973) (a defendant who pleads guilty upon the advice of counsel "may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in McMann"); Mitchell v. Superior Court for City of Santa Clara, 632 F.2d 767, 769-70 (9th Cir. 1980). In order to show prejudice in cases where a defendant claims that ineffective assistance of trial counsel led him to accept a plea offer instead of proceeding to trial, a defendant must demonstrate "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill, 474 U.S. at 59.

### C. The State Court Decision

Petitioner raised his claim that he received ineffective assistance of counsel in connection with the plea bargain process in a petition for writ of habeas corpus he filed in the San Joaquin County Superior Court. (Resp't's Lod. Doc. No. 2.) In addition to his allegations contained in the habeas form, petitioner attached the declaration of Cynthia C. Lie, an Assistant Federal Defender who was representing him in connection with another case. (Id.) Attorney Lie declared that she had spoken with petitioner's trial counsel on the telephone and he advised her that he had no recollection of the particulars of petitioner's case, including the specifics of any conversation between himself and petitioner with regard to whether the offense to which petitioner was pleading guilty was a serious felony within the meaning of California's Three Strikes Law, or whether either party had made an offer of settlement prior to the final plea bargain which petitioner accepted. (Id.) Ms. Lie also declared that her efforts to refresh counsel's recollection were unavailing. (Id.) Citing his long experience as a criminal defense attorney and as a prosecutor with the District Attorney's office, petitioner's trial counsel did tell Ms. Lie that he

8

"couldn't imagine that [he] would have told [petitioner] that it wasn't a strike." (Id.)

The procedure in California for addressing habeas corpus petitions is as follows. Upon review of a petition for post-conviction relief, a California Court accepts the factual allegations of a petition as true and determines whether the facts alleged establish a prima facie case for relief. Cal. R. Ct. 8.385(d). In evaluating a petitioner's claim, the state courts must determine "whether the *allegations* contained in the petition, viewed in the context of the trial record, established a prima facie case of ineffective assistance of counsel." Cannedy v. Adams, 706 F.3d 1148, 1160 (9th Cir. 2013), amended by 733 F.3d 794 (9th Cir. 2013) (emphasis in original). The state court must also "review the record of the trial . . . to assess the merits of the petitioner's claims." Id. (citations omitted). In order to state a prima facie case, a petitioner is not required to prove his claims with absolute certainty." Nunes, 350 F.3d at 1054.

In this case, after reviewing petitioner's habeas petition, the San Joaquin County Superior Court concluded that petitioner had made a prima facie showing as to the first prong of the Strickland analysis by demonstrating that his trial counsel's failure to correctly advise him that the offense to which he was pleading guilty was a "strike" offense constituted deficient performance. Accordingly, the court ordered respondent to file an "informal" response addressing whether petitioner had suffered any prejudice as a result of his trial counsel's failure to correctly advise him that the charge to which he was pleading guilty was a "strike." Specifically, the Superior Court issued the following order:

> Defense counsel represented to Petitioner that the resulting conviction would not be a serious felony or a "strike" when, in fact, it was.
>
> At the change of plea hearing, defense counsel represented to the court that Petitioner was willing to plead guilty to a charge of Penal Code, section 261(a)(3) – rape when a person is prevented from resisting by intoxication and this condition was known by the accused. In its advisements to Petitioner at the time the plea was submitted to the court, the court advised, "Because it is a serious

9

felony or violent felony conviction, you will be required to complete 85 percent of the term." At that advisement, defense counsel stated, "No, that was not agreed upon. That is why we found this section." The court then asked, "This is not a strike, then?" The prosecutor then told the court, "I don't believe so, Judge." Accepting the representations of both the defense and the

prosecution, the court then advised Petitioner, "You will be eligible for 50 percent good time/work time credits."

Rape, however, is a serious felony and was deemed as such at the time of the offense. See Penal Code, section 1192.7.

Thus, Petitioner has made a prima facie for the first prong; that is, he has shown that "counsel's performance was deficient because the representation fell below an objective standard of reasonableness under prevailing professional norms." In order to make a prima facie showing warranting habeas relief, however, Petitioner must also show prejudice.

"When the contention is that incompetent advice led to a defendant's pleading guilty, a defendant must establish not only incompetent performance by counsel, but also a reasonable probability that, but for counsel's incompetence, the defendant would not have pleaded guilty and would have insisted on proceeding to trial." In re Vargas (2000) 83 C.A.4th 1125, 1133-1134 citing In re Alvernaz (1992) 2 C.4th 924. Petitioner asserts that he would not have entered a guilty plea, but for the representation that the conviction was not a serious felony or a strike.

In light of the above allegation that Petitioner would not have pled guilty and would have insisted on a trial had he known that the offense is categorized as a serious felony and therefore, a strike, IT IS HEREBY ORDERED that Respondent, San Joaquin County District Attorney, shall file a written informal response . . . .

(Resp't's Lod. Doc. 5 at 2-3.)

In response to the Superior Court's order, respondent submitted a letter signed by Kevin A. Hicks, a Deputy District Attorney who was not the prosecutor in petitioner's case. (Resp't's Lod. Doc. 3.) In his letter, Deputy D. A. Hicks informed the Superior Court that the prosecutor and petitioner's trial counsel "evidently misspoke" when they informed the trial judge that the offense to which petitioner was pleading guilty was not a "strike." Id. According to Deputy D.A. Hicks, the parties were actually representing to the court was that the charge was not a "violent"

felony; therefore, petitioner would not have to complete 85 percent of his term before becoming eligible for release. <u>Id.</u> Hicks argued, "when they said it was not a 'strike,' what the[y] really meant was that it was not a 'violent' felony for credit purposes." <u>Id.</u>

In support of this interpretation of what occurred at the change of plea hearing[2], Deputy D.A. Hicks noted that the context of the colloquy highlighted by petitioner was a discussion of the time credits petitioner would be entitled to receive. <u>Id.</u> Hicks also argued in his informal response that whether the offense to which petitioner was pleading guilty could be used as a "strike" if petitioner committed a future felony was merely a collateral consequence of petitioner's plea that his trial counsel was not required to address with him. <u>Id.</u> He argued that, therefore, "any misunderstanding as to the possible future collateral effects of the plea do not render it involuntary." <u>Id.</u> Accordingly, Hicks concluded that any failure by defense counsel to advise petitioner that he was pleading guilty to a strike offense was "patently non- prejudicial." <u>Id.</u> Finally, Deputy D.A. Hicks argued that petitioner could not show prejudice from any "affirmative misadvice" by his trial counsel that the charge was not a "strike" because:

> Here, defendant must prove that, had he known he'd be subject to increased penalty for a future felony, he would not have entered the plea. That is, that he fully intended to commit a future felony. Not only is that a very specious statement, one questions whether a court of justice should even entertain it.

<u>Id.</u>

Although he wasn't asked to do so by the San Joaquin County Superior Court, petitioner submitted his own brief in reply to respondent's informal response, which he signed under penalty of perjury and in which he stated:

> In deciding whether to accept the offer, petitioner asked his attorney whether the offense to which I would be pleading guilty was a

---

[2] There is no reason to believe that Deputy District Attorney Hicks was present at petitioner's change of plea hearing. As noted, Hicks was not the prosecutor in petitioner's case.

11

'strike,' a serious or violent felony. Petitioner's attorney repeatedly assured petitioner that it was not a strike. In addition, the information in which the District Attorney charged the petitioner omitted the customary allegation that the offense charged was a serious felony.

(Resp't's Lod. Doc. 4.)

After receiving and reviewing the respondent's informal response and petitioner's unsolicited reply, the Superior Court denied habeas relief as to petitioner's claim of ineffective assistance of counsel, finding that petitioner had failed to make out a prima facie case that he was prejudiced by his trial counsel's deficient performance. In this regard, the court reasoned as follows:

Two prongs must be fulfilled in order to warrant habeas relief on an ineffective assistance of counsel claim. The petitioner must show that counsel's performance fell below an objective standard of reasonableness. The second prong requires that petitioner establish prejudice.

Petitioner has made a prima facie case that counsel's performance was deficient. The only remaining issue is whether he has made a prima facie showing of prejudice.

Petitioner makes the following statement, under penalty of perjury:

"On or about May 3, 2004, shortly before the scheduled commencement of trial, my attorney told me that the District Attorney had made an offer to settle the case: in return for my plea of guilty to a violation of Penal Code, section 261(a)(3), I would receive a stipulated sentence of three years imprisonment (I had at that time 357 days credit for time served).

In deciding whether to accept the offer, I asked my attorney whether the offense to which I would be pleading guilty was a 'strike,' a serious or violent felony. He repeatedly assured me that it was not a strike. The information in which I was charged omitted any allegation that this was a serious felony. During the plea colloquy, Judge Hammerstone characterized the offense as a 'serious felony or violent felony.' My attorney disputed this: 'No, that was not agreed upon. That is why we found this section.' The judge then stated: 'This is not a strike, then?' The prosecutor responded: 'I don't believe so, Judge.' I learned that this was incorrect on January 25, 2008.

But for my attorney's affirmative misadvisement as to this collateral consequence of my guilty plea, I would not have accepted

12

the plea bargain and would have exercised my right to jury trial."

Thus, the issue is whether Petitioner's declaration is enough to establish prejudice. In re Resendiz (2001) 25 C.4th 230 is on point and the answer is no. The Supreme Court explains:

"The test for prejudice . . . is well established. [T]he United States Supreme Court explained that a defendant who plead guilty demonstrates prejudice caused by counsel's incompetent performance in advising him to enter the plea by establishing that a reasonably [sic] probability exists that, but for counsel's incompetence, he would not have pled guilty and would have insisted, instead, on proceeding to trial.

Petitioner specifically avers that, if counsel had informed him he would be deported as a consequence of his guilty pleas, he would not have pled guilty and would have elected to be tried . . .

The Attorney General rightly reminds us, however, that petitioner's assertion he would not have pled guilty if given competent advice, 'must be corroborated independently by objective evidence.' (Citations omitted.) 'In determining whether a defendant, with effective assistance, would have accepted [or rejected a plea] offer, pertinent factors to be considered include: whether counsel actually and accurately communicated the offer to the defendant; the advice, if any, given by counsel; the disparity between the terms of the proposed plea bargain and the probably [sic] consequences of proceeding to trial, as viewed at the time of the offer; and whether the defendant indicated he or she was amenable to negotiating a plea bargain.'

In determining whether or not a defendant who has pled guilty would have insisted on proceeding to trial had he received competent advice, an appellate court also may consider the probable outcome of any trial, to the extent that may be discerned." Ibid @ 253-254.

Petitioner filed a Traverse and as to this issue, he writes, "[n]or does the District Attorney proffer evidentiary assertions to rebut the undersigned's declaration."

Thus, the final question is whether there is something more than Petitioner's sworn statement that "but for my attorney's affirmative misadvisement as to this collateral consequence of my guilty plea, I would not have accepted the plea bargain and would have exercised my right to jury trial." It is certain, in light of Resendiz, supra, that the statement alone is not enough.

The only other evidence which is pertinent to this issue is:

1) Petitioner was offered 3 years with credit for time served at 357 days. The sentence term for rape is 3 years/6 years/8 years. See Penal Code, section 264.

2) The preliminary hearing transcript (Exhibit B to petition)

indicates that there was testimony implicating a man known as "Theo" as the perpetrator; there was also evidence of a "cold DNA hit on Arquimedes Mendoza;" finally, there was a stipulation; to wit, "a DNA sample taken from this defendant [Mendoza] matched a semen swab taken from the victim in this case . . . on the date in question, July 17th, 1999."

The above evidence does not corroborate independently Petitioner's assertion that he would not have pled guilty had he known the conviction would be a "strike."

Also significant to this petition is the fact that Petitioner has picked up another strike and now has two strike convictions. This fact was not presented as part of the petition itself, but rather, is included in Petitioner's argument in the Traverse. It reads:

"Petitioner was particularly anxious to avoid a strike conviction because he had previously suffered a strike conviction for an offense he had committed after the date alleged for the instant offense. The record of the plea colloquy circumstantially corroborates petitioner's assertion, in that counsel for both parties purported to correct the Court's attempt to advise Mr. Mendoza that the offense was a serious or violent felony. The record of the plea colloquy also confirms that the District Attorney had been amenable to a non-strike disposition of the case, . . ." See Traverse, page 3:11-23.

The mere fact that he was facing another strike is not necessarily significant to establish prejudice because had he proceeded to trial and been convicted, he would have had a strike against him in any event. See In re Resendiz, supra, @ 254 ["While it is true that by insisting on trial petitioner would for a period have retained a theoretical possibility of evading the conviction that rendered him deportable and excludable, it is equally true that a conviction following trial would have subjected him to the same immigration consequences."].

Accordingly, the petition is denied. Petitioner has not met his burden of making a prima facie case of prejudice. See In re Bower (1985) 38 C.3d 865; see also, In re Resendiz (2001) 25 C.4th 230.

(Resp't's Lod. Doc. 6 at 1-4.)

After the San Joaquin County Superior Court denied habeas relief, petitioner raised this same ineffective assistance of counsel claim in habeas petitions filed in the California Court of Appeal and California Supreme Court. (Resp't's Lod. Docs. 7, 9.) Those petitions were both summarily denied. (Resp't's Lod. Docs. 8, 10.) The reasoned decision of the San Joaquin County Superior Court is therefore the operative decision for purposes of this court's review of

14

petitioner's claim of ineffective assistance of counsel. <u>Ylst v. Nunnemaker</u>, 501 U.S. 797, 805 (1991); <u>Avila v. Galaza</u>, 297 F.3d 911, 918 (9th Cir. 2002).

**D.    Analysis**

The statutory authority to issue habeas corpus relief for persons in state custody is defined by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  Section 2254(d) states:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A state court decision is "contrary to" clearly established federal law if it applies a rule contradicting a holding of the Supreme Court or reaches a result different from Supreme Court precedent on "materially indistinguishable" facts.  <u>Price v. Vincent</u>, 538 U.S. 634, 640 (2003). Under the "unreasonable application" clause of § 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case.  <u>Lockyer v. Andrade</u>, 538 U.S. 63, 75 (2003); <u>Williams v. Taylor</u>, 529 U.S. 362, 413 (2000); <u>Ocampo v. Vail</u>, 649 F.3d 1098, 1106 (9th Cir. 2011); <u>Chia v. Cambra</u>, 360 F.3d 997, 1002 (9th Cir. 2004).

Section 2254(d)(2) authorizes federal habeas relief when the state-court decision was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  As the Ninth Circuit has noted, "such unreasonable determinations

15

'come in several flavors,' one of them being 'where the fact-finding process itself is defective.'

Taylor v. Maddox, 366 F.3d 992, 1000, 1001 (9th Cir. 2004)." Mike v. Ryan, 711 F.3d 998, 1007

(9th Cir. 2013). In the end, a state court's fact-finding process is properly found to be

unreasonable under § 2254(d)(2) when a reviewing court is "satisfied that any appellate court to

whom the defect is pointed out would be unreasonable in holding that the state court's factfinding

process was adequate." Mike, 711 F.3d at 1007 (quoting Taylor, 366 F.3d at 1000). See also

Hurles v. Ryan, 706 F.3d 1021, 1038 (9th Cir. 2013) ("We have held repeatedly that where a state

court makes factual findings without an evidentiary hearing or other opportunity for the petitioner

to present evidence, 'the fact-finding process itself is deficient' and not entitled to deference.")

(and cases cited therein); Taylor, 366 F.3d at 1001("If, for example, a state court makes

evidentiary findings without holding a hearing and giving petitioner an opportunity to present

evidence, such findings clearly result in an "unreasonable determination" of the facts.")

Likewise, "'where the state courts plainly misapprehend or misstate the record in making

their findings, and the misapprehension goes to a material factual issue that is central to

petitioner's claim, that misapprehension can fatally undermine the fact-finding process, rendering

the resulting factual finding unreasonable.'" Mike, 711 F.3d at 1008 (quoting Taylor, 366 F.3d at

1001). Under § 2254(d)(2), a state court decision based on a factual determination is not to be

overturned on factual grounds unless it is "objectively unreasonable in light of the evidence

presented in the state court proceeding." Stanley, 633 F.3d 852, 859 (9th Cir. 2011) (quoting

Davis v. Woodford, 384 F.3d 628, 638 (9th Cir. 2004)).

### 1. The State Court Decision is not Entitled to Deference

As noted, the San Joaquin County Superior Court concluded that petitioner had failed to

establish a prima facie case that he was prejudiced by his trial counsel's deficient performance.

The previously-assigned magistrate judge determined this to be based on an unreasonable

application of federal law pursuant to 28 U.S.C. § 2254(d)(1) and on an unreasonable

determination of the facts by that state court under 28 U.S.C. § 2254(d)(2). Specifically, the

magistrate judge held as follows:

**1. Was the State Court Decision an Unreasonable Application of Federal Law?**

> In order to establish prejudice, petitioner was required to show that if he had been correctly advised by his trial counsel that he was pleading guilty to an offense that qualified as a strike under California law he would have rejected the plea offer and proceeded to trial. More specifically, petitioner needed only to demonstrate that he had sufficient evidence for a reasonable fact finder to conclude with "reasonable probability" that he would have rejected the plea offer if he had been correctly advised, a probability "sufficient to undermine the result." <u>Strickland</u>, 466 U.S. at 694. With petitioner's factual allegations being accepted as true, as the state court was bound to do when determining whether he had established a prima facie case for relief, petitioner had established that: (1) his attorney gave him erroneous information about the nature of the charge to which he was pleading guilty, and (2) if he had been accurately informed he would not have accepted the plea offer but would have proceeded to trial. These assertions are sufficient to support an ineffective assistance claim, including the prejudice prong of the <u>Strickland</u> analysis.

> In addition to the factual allegations contained in petitioner's state habeas petition, the record before the San Joaquin County Superior Court provided ample support for petitioner's assertion that he would have rejected the plea offer if he had known he was required to plead guilty to a "strike." First, throughout the state court proceedings petitioner consistently demonstrated that he was not willing to plead guilty to a "strike" offense. It is notable that petitioner did not agree to plead guilty until the eve of his scheduled jury trial when for the first time a plea bargain that included a plea to a non-strike offense was offered to him.[3] The transcript of the change of plea hearing also reinforces petitioner's contention that he was not willing to plead guilty to a "strike" offense. It is clear from the transcript of that hearing that petitioner's trial counsel and the prosecutor understood that petitioner was unwilling to plead to a strike and that they structured the last-minute plea deal accordingly. Further, the fact that petitioner had already suffered a strike conviction and understood

---

[3] The record reflects that this case was pending for approximately eight months in the San Joaquin County Superior Court from petitioner's initial appearance on September 8, 2003 until his guilty plea and sentencing took place on May 3, 2004. The record reflects numerous court appearances in the case, including the preliminary examination on October 8, 2003, at which plea discussions may have taken place. (<u>See</u> <u>e.g.</u>, Resp't's Lod. Doc. entitled "Clerk's Transcript" at consecutive pgs. 8-11, 32-24, 37-42.)

the consequences of suffering another, lends credibility to his claim that he was insisting on avoiding another strike conviction. As stated by petitioner in his traverse, "The record makes clear that it was the charge bargained for – including trial counsel's false assurance that the charge was not a strike offense – that was crucial to the plea on the eve of trial." (ECF No. 34 at 1.)

Finally, it is at least arguable that petitioner had a reasonable chance of prevailing at trial, given that a witness at the scene of the crime identified someone other than petitioner as the perpetrator of the rape. (See Pet., Exh. B at 20-21.) Although petitioner's DNA was present on a swab taken from the victim, petitioner had contended that his contact with the victim and other persons at the scene could have easily resulted in an inadvertent transfer of DNA to the victim. Petitioner's conviction at trial under these circumstances cannot fairly be characterized as inevitable.

Accordingly, accepting petitioner's allegations as true, he clearly stated a prima facie case of prejudice – that absent his trial counsel's faulty advice he would not have pled guilty but would have insisted on going to trial. Both the petition itself and the state court record as a whole supported petitioner's claim in this regard. The decision of the California Superior Court that petitioner had not demonstrated a prima facie case of prejudice under Strickland therefore applied clearly established federal law to the facts of this case unreasonably under § 2254(d)(1). As the Ninth Circuit has observed under similar circumstances:

[Petitioner] needed only to demonstrate that he had sufficient evidence for a reasonable fact finder to conclude with "reasonable probability" that he would have accepted the plea offer, a probability "sufficient to undermine the result" (Strickland, 466 U.S. at 694, 104 S. Ct. 2052). He met that burden, and to the extent that the state court demanded more it applied the Strickland test unreasonably. In other words, it was objectively unreasonable for the state court to conclude on the record before it that no reasonable factfinder could believe that [petitioner] had been prejudiced. Nunes, 350 F.3d at 1054-55. See also Cannedy, 706 F.3d at 1160-61, 1166 (Petitioner's allegations in his state habeas petition that his trial counsel rendered ineffective assistance was sufficient to state a prima facie case for relief and "no reasonable argument supports the state court's determination that Petitioner suffered no prejudice.")

It was objectively unreasonable for the state court to conclude on the record before it that no reasonable factfinder could believe that petitioner had been prejudiced by his trial counsel's deficient performance. As stated by the Ninth Circuit in Nunes, "with the state court having purported to evaluate Nunes' claim for sufficiency alone, it should not have requires Nunes to prove his claim without affording him an evidentiary hearing – and it surely should not have required Nunes to prove his claim with absolute certainty." Nunes, 350 F.3d at 1054. See also Lambert v. Blodgett, 393 F.3d 943, 968 n.14 (9th Cir. 2004).

For all of these reasons the court concludes that the San Joaquin County Superior Court's decision was based on an unreasonable application of federal law and is therefore not entitled to deference in this federal habeas corpus proceeding. See 28 U.S.C. § 2254(d)(1).

## 2. Whether the State Court made an Unreasonable Determination of the Facts

The San Joaquin County Superior Court's conclusion that petitioner failed to establish a prima facie case of prejudice under Strickland was also based on an unreasonable determination of the facts of this case pursuant to 28 U.S.C. § 2254(d)(2). As noted above, the Superior Court found, as a matter of state law, that petitioner's sworn statement was not sufficient, without more, to demonstrate prejudice.[4] That court also concluded that nothing in the record served to corroborate petitioner's assertion that he would have proceeded to trial had he known that the plea bargain offer he had accepted required him to plead guilty to a strike despite the assurances to the contrary. Specifically, the Superior Court relied on the following facts: (1) petitioner was offered a plea bargain calling for a three year prison term with credit for time served; (2) the sentence for rape is "3 years/6 years/8 years;" (3) the preliminary hearing transcript indicated an eyewitness had implicated someone other than petitioner as the perpetrator of the rape; (4) there was evidence of a cold DNA hit implicating petitioner, and (5) petitioner's DNA matched a semen swab taken from the victim. (Resp't's Lod. Doc. 6 at 3.) The Superior Court concluded that those facts did not support petitioner's assertion that he would have proceeded to trial had he known he was pleading guilty to a strike offense. However, there is absolutely no indication in the record before this court that petitioner's decision to plead guilty on the eve of jury trial was motivated by the agreed-upon sentence rather than the non-strike nature of the charge. Further, there is nothing in the record to support any suggestion of the possible imposition of an enhanced sentence beyond the

_____

[4]  In federal court, "[s]elf-serving statements by a defendant that his conviction was constitutionally infirm are insufficient to overcome the presumption of regularity accorded state convictions." Turner, 281 F.3d at 881. Several circuit courts have concluded that a habeas petitioner must show some objective evidence other than his unsupported assertions to establish that he suffered prejudice in the context of ineffective assistance of counsel claims during the plea bargain process. See Pham v. United States, 317 F.3d 178, 182 (2d Cir. 2003) (although "our precedent requires some objective evidence other than defendant's assertions to establish prejudice," a "significant sentencing disparity in combination with defendant's statement of his intention is sufficient to support a prejudice finding"); Toro v. Fairman, 940 F.2d 1065, 1068 (7th Cir. 1991) (requiring "objective evidence" that a petitioner would have accepted a plea offer); Diaz v. United States, 930 F.2d 832, 835 (11th Cir. 1991) (petitioner's "after the fact testimony concerning his desire to plead, without more, is insufficient to establish that but for counsel's alleged advice or inaction, he would have accepted the plea offer). As detailed above, in this case, however, several matters of record at the very least provide circumstantial support for petitioner's own claim.

19

statutory minimum had petitioner not agreed to plead guilty. Any factual conclusion to the contrary is not supported by the facts before the Superior Court. Rather, the only consideration raised on the record was the defense concern that the charge the defendant was pleading to was not a serious or violent felony under California's Three Strikes Law. Nor do the other facts cited by the Superior Court establish that petitioner's conviction after a trial was necessarily likely.

On the other hand, the Superior Court ignored those parts of the record that supported petitioner's allegation that he was not willing to plead guilty to a strike offense and that the prosecutor and defense counsel had structured the plea deal to avoid that outcome. Petitioner's sworn affidavit supported his contention that he would not have pled guilty if he had known the offense to which he was pleading guilty was a strike. Again, as the Ninth Circuit has held, "it is unacceptable for the Superior Court to have "eschewed an evidentiary hearing on the basis that it was accepting [petitioner's] version of the facts, then to have given the lie to that rationale by discrediting [petitioner's] credibility and rejecting his assertions." Nunes, 350 F.3d at 1055 n.7. Based upon his sworn affidavit, the objective facts in the record, and the colloquy at his change of plea hearing, petitioner has consistently shown that he was willing to plead guilty only if the plea did not cause him to suffer another strike conviction. He has certainly demonstrated a reasonable probability that, but for his trial counsel's deficient advice, he would have rejected the offer and proceeded to trial. Id. at 1054. The state court unreasonably faulted petitioner for failing to corroborate his allegations of prejudice without allowing him the opportunity to do so at an evidentiary hearing.[5]

In sum, although the San Joaquin County Superior Court did not necessarily misstate the record before it, it relied only on a portion of the record to support its conclusion that petitioner had failed to demonstrate a prima facie case of prejudice and ignored other parts of the record that supported petitioner's contention that he would have proceeded to trial if he had been accurately advised of the consequences of his guilty plea. Essentially, the Superior Court decided petitioner would not have elected to proceed to trial even if he had been correctly advised about the nature of the offense to which he was pleading without any evidence to support that conclusion and in the face of circumstances suggesting to the contrary. Under these circumstances it was unreasonable for the Superior Court to reject petitioner's assertions without engaging in further fact-finding. At the very least, it was unreasonable for the

---

[5] The Superior Court also took into consideration the fact that petitioner would have suffered another strike conviction in any event if he had gone to trial and been convicted. See In re Resendiz, 25 Cal.4th 230, 254 (2001), abrogated on other grounds in Padilla v. Kentucky, 559 U.S. 356 (2010) (taking into consideration "the probable outcome of any trial, to the extent that may be discerned" when considering whether a petitioner who pled guilty would have insisted on proceeding to trial had he received competent advice). Here, however, it cannot reliably be discerned that a jury would have convicted petitioner in light of evidence that someone other than petitioner had been identified as the perpetrator of the rape.

state court to have denied petitioner the opportunity to further develop the record where the record as it already stood was clearly consistent with his allegations.

Deference to a state court's factual findings under AEDPA is warranted only if the court's fact-finding process survives the dictates of § 2254(d)(2). In other words, the state court decision must not be "based on an unreasonable determination of the facts." 28 U.S.C. § 2254(d)(2). See also Miller-El v. Cockrell, 537 U.S. 322, 340 (2003) ("deference does not imply abandonment or abdication of judicial review.") Here, the California Superior Court's conclusion that petitioner failed to establish a prima facie case of prejudice unreasonably ignored those parts of the record that supported petitioner's allegations of prejudice stemming from the performance it had already found to be deficient. As stated in Nunes, "[w]hile there may be instances where the state court can determine without a hearing that a criminal defendant's allegations are entirely without credibility or that the allegations would not justify relief even if proved, that was certainly not the case here." Nunes, 350 F.3d at 1055.

For all of these reasons, this court concludes that the Superior Court's decision rejecting petitioner's ineffective assistance of counsel claim due to a failure to establish a prima facie case of prejudice was based on an unreasonable determination of the facts of this case and is not entitled to deference in this federal habeas proceeding. See 28 U.S.C. § 2254(d)(2).

(ECF No. 61 at 14-20.) The undersigned adopts these findings to the extent they are not inconsistent with the findings below.

## 2. Evidentiary Hearing

After determining that the state court's decision on petitioner's ineffective assistance of counsel claim was both an unreasonable application of federal law and was based on an unreasonable determination of the facts, the then-assigned magistrate judge found that an evidentiary hearing was appropriate pursuant to 28 U.S.C. § 2254(e)(2), which provides:

(e)(2) If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that-

(A) the claim relies on-

(i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was

previously unavailable; or

> (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and

> (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable fact finder would have found the applicant guilty of the underlying offense.

Under this statutory scheme, a district court presented with a request for an evidentiary hearing must first determine whether a factual basis exists in the record to support a petitioner's claims and, if not, whether an evidentiary hearing "might be appropriate." Baja v. Ducharme, 187 F.3d 1075, 1078 (9th Cir. 1999). On review, the court found that petitioner satisfied the diligence requirement and further found that an evidentiary hearing is appropriate to consider whether the petitioner has shown a colorable claim for relief. (ECF No. 61 at 20-24.) In so holding, the then-assigned magistrate judge stated:

> The San Joaquin County Superior Court's decision that petitioner failed to demonstrate a prima facie case of prejudice with respect to his ineffective assistance of counsel claim was rendered without the benefit of sufficient evidence necessary to support that decision. Whether petitioner's allegations are in fact true or not has never been determined. However, his allegations with respect to prejudice are certainly plausible and, if true, they would entitle him to federal habeas relief. Nonetheless, evidence is required in order to determine whether but for the erroneous advice given him by his trial counsel regarding the nature of the charge which was the subject of the plea offer, petitioner would not have pleaded guilty and would have instead insisted on proceeding with the jury trial that was about to begin. Petitioner's claim that he suffered prejudice as a result of his trial counsel's ineffective assistance cannot be resolved in this case by reference to the state court record because that record does not reflect the facts necessary to resolve that claim. The record before the state court leaves significant questions unanswered about any discussions between petitioner, his trial counsel and the prosecutor with respect to the plea bargain process and/or whether petitioner was offered plea bargains prior to the first day of trial but refused to accept them because he would have been required to plead guilty to a "strike" offense.

(ECF No. 61 at 24.)

As noted supra, the evidentiary hearing on petitioner's ineffective assistance of counsel claim related to the plea agreement was vacated on petitioner's request. Despite petitioner's counsel's best effort, he was unable to communicate with trial counsel and unable to access the trial file before trial counsel's death in December 2016. In addition, discussions with the prosecutor did not reveal any information not included in the record, and the deposition of the trial judge proved unhelpful. There is therefore no additional evidence presented to the court.

### 3. Discussion

Notwithstanding the lack of corroborating evidence, petitioner argues that the evidence before the court is sufficient to entitle him to habeas relief. Respondent counters that the petition must be denied on the lack of corroborating evidence alone because the previously-assigned magistrate judge noted that "evidence is required" to support petitioner's claims. Since petitioner has not submitted any such evidence, respondent argues that the claim must be denied.

The court declines to adopt respondent's argument insofar as it is based on the proposition that the undersigned is bound by the determination of the previously-assigned magistrate judge that "evidence is required." In Delta Savings Bank v. U.S., 265 F.3d 1017, 1027 (9th Cir. 2001), the Ninth Circuit held that where a case was reassigned to another judge, the second judge has discretion to review the decision of a predecessor in the same case but is bound by the doctrine of the law of the case. "The prior decision should be followed unless: (1) the decision is clearly erroneous and its enforcement would work a manifest injustice, (2) intervening controlling authority makes reconsideration appropriate, or (3) substantially different evidence was adduced at a subsequent trial." Id. (quoting Jeffries v. Wood, 114 F.3d 1484, 1489 (9th Cir. 1997)). For the reasons set forth below, the court concludes that the decision of the previously-assigned magistrate judge was erroneous and would work a manifest injustice based as it was on the finding that the record was insufficient for a determination on petitioner's claim of prejudice.

### a.    Trial Counsel's Performance

The court turns first to trial counsel's performance and begins its analysis by acknowledging the obvious: there is no evidence in the record other than petitioner's own statements that he and trial counsel discussed a plea at any point before May 3, 2004. In addition, to the extent there were plea discussions, there is no evidence that trial counsel affirmatively misstated the strike consequence of the offense to petitioner. Unfortunately, petitioner's appointed habeas counsel was unable to secure trial counsel's trial folder, was unable to speak to him at all despite diligent efforts, and was unable to glean any information from the trial judge or prosecutor.

The record does reveal that petitioner's Federal Defender had an opportunity to speak to trial counsel in February 2008. A declaration from this public defender filed in support of the petition for writ of habeas corpus recounts a telephone conversation she had with petitioner's trial counsel, who did not recall the specifics of petitioner's case or the plea bargain process but did state "that he 'couldn't imagine that he would have told [petitioner] that it wasn't a strike,' citing his long experience as a criminal defense attorney and his experience as a prosecutor with the District Attorney for the County of San Joaquin." Pet. Ex 1B-3 (ECF No. 1 at 34-35 ¶ 7). This statement obviously undercuts petitioner's claim that he was repeatedly reassured that his entry of a guilty plea was for a non-strike offense.

There is, however, strong evidence to support petitioner's claim of misadvisement in the form of the transcript of the plea hearing itself. There, after the judge characterized the offense as "a serious felony or violent felony conviction," trial counsel objected with, "No, that was not agreed upon. That is why we found this section." Per petitioner, since both a "serious" felony and a "violent" felony are strikes, counsel's objection of "That is why…" led the trial judge to ask, "This is not a strike, then?" The prosecutor then responded with "I don't believe so, Judge."

Petitioner argues that this exchange clearly shows that the particular section chosen for the plea deal was selected because counsel believed it to be a non-strike offense, and both trial counsel and the prosecutor corroborated that understanding. Of course, trial counsel was wrong; a rape conviction under § 261(a)(3) is a "serious" felony and thus a strike offense. See Cal. Penal Code § 1192.7(c)(3).

Respondent argues that, while at first glance the transcript of the plea hearing corroborates petitioner's claim, the colloquy is actually directed to the rate at which petitioner could earn credits against his sentence. The government contends that this rate is based on a distinction between a "violent" and "serious" felony. Respondent acknowledges that both are "strikes" under California law, but claims that the difference between the rate of accumulation of good conduct credit was the real reason for trial counsel's "astute[]" interjection because categorization of the crime as a "serious" felony would have entitled petitioner to release after serving 369 days whereas a "violent" felony would have required him to serve 692 days. Respondent claims that the trial court obviously misspoke, and defense counsel immediately corrected it. Per the government, any reference to a "strike" by the trial judge and the prosecutor was mistaken and does not change this interpretation of the record. In essence, the government argues against a literal reading of the hearing transcript.

The San Joaquin County Superior Court initially determined that petitioner had presented a prima facie case that his trial counsel's error in advising petitioner that the charge to which he was pleading guilty was not a "strike" satisfied the first prong of the Strickland test. After receiving respondent's informal response, described above, the Superior Court did not revisit the deficient performance of counsel issue, but rather denied petitioner habeas relief based on his failure to establish a prima facie case of prejudice flowing from the deficient performance of his counsel. It thus appears that the Superior Court did not adopt respondent's argument that both

the prosecutor and petitioner's trial counsel simply "misspoke" when they told the trial court that the charge to which petitioner was pleading guilty was not a "strike."

This court agrees with the Superior Court's determination that petitioner did present a prima facie case that his trial counsel rendered deficient performance in this regard. Although a "mere inaccurate prediction" of the possible ramification of pleading guilty, standing alone, does not constitute ineffective assistance of counsel (see Iaea v. Sunn, 800 F.2d 861, 865 (9th Cir. 1986)), this case involves more than a "mere inaccurate prediction" or a failure to advise of a theoretical collateral consequence of pleading guilty. As petitioner points out, "even if a failure to advise a defendant that the offense to which he is pleading guilty is a strike were [sic] within a constitutionally acceptable range of competency, . . . an attorney who induces a client to plead guilty based upon patently false assurances, and who does so having actual notice that these assurances are of importance to the defendant's decision whether to accept a plea, cannot be said to be effective in his representation." (ECF No. 34 at 2.)

It appears clear that petitioner's trial counsel knew that his client wanted to avoid suffering a second serious or violent felony conviction. Counsel therefore deliberately set out to find an offense to which petitioner could plead guilty that would satisfy his client's desire and informed petitioner that he had done so. Under these circumstances, trial counsel's failure to ensure that the offense he chose was not a serious and violent felony strike, as he had promised, was clearly "outside the wide range of professionally competent assistance." See Iaea, 800 F.3d at 865 ("the gross mischaracterization of the likely outcome presented in this case, combined with the erroneous advice on the possible effects of going to trial, falls below the level of competence required of defense attorneys."). Constitutionally effective counsel must competently assess a defendant's sentencing exposure and disclose the exposure to the defendant. See Hill, 474 U.S. at 56-58; Turner, 281 F.3d at 881.

### b.    Prejudice

The court now turns to whether petitioner suffered prejudice as a result of trial counsel's failure to advise him of the strike consequence of the offense. Prejudice exists if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694.

Respondent argues that it was unlikely that defense counsel's alleged misstatement played as significant a role in petitioner's decision to plead guilty as he now contends. First, the government argues that it seems unlikely petitioner would have rejected the plea deal given the evidence of his guilt. Based on the transcript of the preliminary hearing, the victim was intoxicated and passed out on the couch. When she awoke, she found her pants and underwear pulled down and her friend attacking a man. Witnesses identified this man as "Theo" and stated that he had with a withered arm; petitioner is not named "Theo" and does not have a withered arm. Even so, petitioner's own statement placed him at the party. In addition, a vaginal exam revealed petitioner's semen in the victim's vagina. The defense theory was that Theo accidentally came into contact with petitioner's semen after sitting next to petitioner while the latter masturbated and then ejaculated onto the carpet; this semen was then transferred to the victim by Theo. Respondent posits that this theory was too implausible and unreasonable to be believed by any jury. The government also refers to petitioner's statement that Theo asked petitioner for permission to have sex with the victim. Respondent claims that a jury would have heard this and logically construed this as Theo having earlier witnessed petitioner engaging in sexual intercourse with the unconscious victim.

Respondent next argues that petitioner received substantial benefits from agreeing to a plea deal, noting the disparity between petitioner's sentence under the plea deal and the potential sentence he would have suffered on conviction following a trial. Had petitioner proceeded to trial,

he faced an upper term of eight years for raping an intoxicated person (see Cal. Penal Code § 264(a) (West 2004)) and an additional two consecutive one-year county jail terms for separate misdemeanor resisting-arrest charges (Cal. Penal Code § 148(a)(1)). Thus, petitioner faced a total of ten years in custody. The government argues that petitioner's drastically reduced sentence as a result of his plea undercuts the rationality of his insistence that he would have rejected the plea deal and proceeded to trial.

While the respondent's arguments are directed to whether petitioner would have been more successful at trial than he was by accepting the plea, the Supreme Court recently affirmed that this is not the proper question in an ineffective assistance of counsel claim such as this. "When a defendant alleges his counsel's deficient performance led him to accept a guilty plea rather than go to trial, we do not ask whether, had he gone to trial, the result of that trial 'would have been different' than the result of the plea bargain. … We instead consider whether the defendant was prejudiced by the 'denial of the entire judicial proceeding … to which he had a right.'" Lee v. United States, 137 S. Ct. 1958, 1965 (June 23, 2017) (citing Roe v. Flores-Ortega, 528 U.S. 470, 482-83 (2000)). In cases such as this, then, when the error goes to a defendant's "understanding of the consequences of pleading guilty," the court is tasked with a different question. See Lee, 137 S. Ct. at 1965-66. "Rather than asking how a hypothetical trial would have played out absent the error, the Court consider[s] whether there was an adequate showing that the defendant, properly advised, would have opted to go to trial." Id.

> "Surmounting Strickland's high bar is never an easy task," Padilla v. Kentucky, 559 U.S. 356, 371, 130 S. Ct. 1473, 176 L.Ed.2d 284 (2010), and the strong societal interest in finality has "special force with respect to convictions based on guilty pleas." United States v. Timmreck, 441 U.S. 780, 784, 99 S. Ct. 2085, 60 L.Ed.2d 634 (1979). Courts should not upset a plea solely because of post hoc assertions from a defendant about how he would have pleaded but for his attorney's deficiencies. Judges should instead look to contemporaneous evidence to substantiate a defendant's expressed preferences.

Lee, 137 S. Ct. at 1967.

In Lee, the defendant—a lawful permanent resident—"adequately demonstrated a reasonable probability that he would have rejected" a plea for a drug offense "had he known that it would lead to mandatory deportation." 137 S. Ct. at 1962, 1967. Deportation was the determinative issue in Lee's plea decision. Id. at 1967. Lee repeatedly asked his attorney whether he faced risk of deportation, and both Lee and his attorney later testified that he would have gone to trial but for counsel failing to apprise him of the immigration consequences of his plea. Id. at 1967-68. Moreover, during the plea colloquy, Lee was clearly confused about the immigration consequences of pleading guilty and only proceeded with the plea after being assured by counsel that the judge's admonition that a conviction could result in deportation was a "standard warning." Id. at 1968. Simply put, but for the "attorney's incompetence, Lee would have known that accepting the plea agreement would *certainly* lead to deportation. Going to trial? *Almost* certainly." Id. (emphasis in original). The "almost" proved critical because the benefits of avoiding deportation so far outweighed the burdens of "a year or two more of prison time" by risking a trial. Id. at 1969. That Lee would not have accepted a plea had he been properly informed, despite overwhelming evidence against him on the charged offense, was "backed by substantial and uncontroverted evidence." Id.

The Ninth Circuit has not yet applied Lee, but other circuits have. In United States v. Pola, --- Fed. Appx. ---, 2017 WL 3098179 (6th Cir. 2017), the defendant was a lawful permanent resident who was sentenced to 46 months in prison after pleading guilty to one count of possessing oxycodone with intent to distribute. As a result of his conviction, petitioner was subject to deportation. The defendant filed a petition for writ of habeas corpus arguing, inter alia, that his attorney did not inform him of the deportation consequence of his plea. Applying Lee, the Sixth Circuit noted that the "*only*" evidence submitted in support of the defendant's argument was

29

his *post hoc* assertion. 2017 WL 3098179, at \*6 (emphasis in original). The contemporaneous evidence, however, did not establish that the defendant would have proceeded to trial but for his attorney's error. Id. The denial of the defendant's habeas petition was thus affirmed.

The Eighth Circuit has also applied <u>Lee</u> to a habeas challenge based on counsel's assertion that entering a plea would likely lead to a prison sentence of twelve years as opposed to the life sentence that the defendant ultimately received. <u>Thompson v. United States</u>, 872 F.3d 560, 566-67 (8th Cir. 2017). The defendant argued that he would not have accepted the plea deal and instead proceeded to trial were it not for his attorney's assurance of a twelve-year sentence. While the defendant's *post hoc* statements "ha[d] a ring of truth" considering the length of the sentence he received, the contemporaneous evidence did not support his claim. Id. at 566-67. At the change of plea hearing, immediately after counsel allegedly provided deficient advice, the district court went over the terms of the defendant's plea agreement, including telling the defendant that the minimum sentence he could receive was twelve years but that he could still be sentenced to a longer term. Id. at 567. The defendant said that he understood. Id.

Similarly, in <u>Young v. Spinner</u>, 873 F.3d 282 (5th Cir. 2017), the defendant claimed that his trial counsel improperly assured him that he would get a one-year sentence if he plead guilty as opposed to the twenty-year sentence that was in fact imposed. After entering his plea but before sentencing, the defendant wrote to his attorney saying he "would not have plead[ed] guilty had [he] know[n] [he] could possibly be facing twenty (20) years in prison." Id. at 284. Although his trial counsel was wrong that the one-year term was even a possibility under the circumstances of that case, counsel did inform defendant that he could request permission to withdraw his plea. Id. The defendant, however, did not move to withdraw his plea prior to his sentencing three months later. Id. He also did not raise any of these issues with the judge at the sentencing hearing. See id. The Sixth Circuit found some contemporaneous evidence in support of the defendant's

position, including the letter to trial counsel and there being no indication in the record that the defendant knew his true sentencing potential prior to his plea. Id. at 287. Nonetheless, the appellate court found that the defendant's failure to assert a plausible defense to the charges asserted against him made it "exceedingly unlikely" that he could show prejudice. Id. In addition, the court noted that the defendant did not seek to withdraw his plea even after his attorney told him that was a possibility. Id.

In each of these above cases, the court was tasked with considering the overlap between defendant's *post hoc* statements and the contemporaneous evidence in the record. In all, the courts found that the defendant's assertions of prejudice were belied by their conduct both during and after the entry of their pleas.

Here, in contrast, petitioner claims that if he was properly advised, he would not have pled guilty and would have instead proceeded to trial. There is, of course, petitioner's sworn affidavit where he avers that he specifically wanted to avoid the consequence of another strike offense since he was acutely aware of the risks associated with another strike after having recently accumulated one in an unrelated case.

Petitioner also discusses what he deems to be the government's weak case against him, including eyewitness testimony identifying another individual as the perpetrator and DNA evidence based on a "cold hit." As discussed supra, respondent disagrees with the alleged weaknesses in its case, and respondent is correct that "[w]here a defendant has no plausible chance of an acquittal at trial, it is highly likely that he will accept a plea if the Government offers one." Lee, 137 S. Ct. at 1966. "But common sense (not to mention our precedent) recognizes that there is more to consider than simply the likelihood of success at trial. The decision whether to plead guilty also involves assessing the respective consequences of a conviction after trial and by plea" Id. Thus, while petitioner's chances at trial may have been minimal at best, as respondent

argues, it is not unreasonable to conclude that petitioner would have preferred those chances to a certain strike in the course of the plea deal.

There is also the fact that petitioner did not plead guilty until after having already been detained for 239 days, and the plea was entered after numerous court appearances and on the eve of a trial. These factors, in combination, suggest petitioner's willingness to proceed to a trial throughout the course of his detention on the charges.

But more compelling support for petitioner's position is a plain reading of the transcript of the change of plea hearing. There, trial counsel noted that the plea offer was being accepted as to that particular subsection "*because it does make a difference*." This was not because the subsection differed from that which petitioner was initially charged – indeed, it is the same subsection that served as the basis of the complaint and information. Rather, the exchange reveals that the difference was attributed to the strike consequences of the plea. When the court referred to the subsection as a "serious felony or violent felony," both of which are strikes, trial counsel immediately interjected with, "No, that was not agreed upon. That is why we found this section." Affirming this implicit focus on the strike nature of the offense ("why we found this section"), the court asked, "This is not a strike, then?" to which the prosecutor responded, "I don't believe so, Judge." All of this is substantial evidence of petitioner's willingness to plea solely because he believed that the offense was not a strike.

Under these particular circumstances, the court finds that petitioner has carried his burden under the second prong of <u>Strickland</u>. Petitioner had adequately demonstrated a reasonable probability that he would have rejected the plea had he known that it would lead to a strike conviction.[6]

////

---

[6] In light of this finding, the court declines to reach petitioner's alternative grounds for relief.

### III. Conclusion

Based on the foregoing, IT IS HEREBY RECOMMENDED that petitioner's motion for habeas relief for ineffective assistance of counsel as to the strike consequence of his plea deal be granted.

These findings and recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, petitioner or respondent may file written objections with the court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may result in waiver of the right to appeal the district court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991). In their objections, the parties address whether a certificate of appealability should issue in the event an appeal of the judgment in this case is filed. See Rule 11, Rules Governing § 2254 Cases (the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant).

Dated: November 13, 2017

DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE